## STATE OF CONNECTICUT *v.* VICTOR SANTIAGO
### (SC 17381)

Sullivan, C. J., and Borden, Norcott, Palmer and Zarella, Js.

Argued May 18—officially released August 30, 2005

*Jeffrey C. Kestenband*, with whom was *William H. Paetzold*, for the appellant (defendant).

*John A. East III*, senior assistant state's attorney, with whom, on the brief, was *Timothy J. Liston*, state's attorney, for the appellee (state).

*Opinion*

PALMER, J. A jury found the defendant, Victor Santiago, guilty of several offenses, including burglary in the third degree as a lesser included offense of burglary in the first degree.[1] The trial court rendered judgments in accordance with the jury verdicts,[2] and the defendant

---

[1] The defendant also was found guilty of larceny in the sixth degree, attempt to commit larceny in the sixth degree, conspiracy to commit burglary in the third degree and interfering with an officer. Those offenses, however, are not the subject of this appeal.

[2] The trial court imposed a total effective sentence of eleven years imprisonment, execution suspended after eighty months, and five years probation.

appealed.[3] On appeal, the defendant's sole claim is that the trial court should not have permitted the jury to consider the charge of burglary in the third degree as a lesser included offense of burglary in first degree because, contrary to the conclusion of the trial court, the state was collaterally estopped from prosecuting the defendant for burglary in the first degree. In particular, the defendant contends that, in view of the fact that the charge of burglary in the first degree was predicated on the theory that the defendant was vicariously liable for the acts of his alleged coconspirator, the state was collaterally estopped from prosecuting the defendant for that offense because his alleged coconspirator previously had been acquitted, at a separate trial, of that same offense. We reject the defendant's claim and, therefore, affirm the judgments of the trial court.

The jury reasonably could have found the following facts. At approximately 11:30 a.m. on January 28, 2000, the defendant and Bryant Browne traveled in Browne's car to a residence located at 320 Kelsey Street in Middletown for the purpose of burglarizing it. Browne parked his car in the driveway, and the two men broke into the home and searched it for valuables. They collected certain items, including a television set and jewelry, and placed them in the foyer and living room in preparation of loading them into Browne's car. At approximately 11:45 a.m., while Browne and the defendant still were inside the residence, Rosemary Fraulino, who lived there with her family, returned home and observed an unfamiliar car in her driveway. Alarmed by the presence of the vehicle in her driveway, Fraulino drove by her home and called the police from her cellular telephone to report the suspicious vehicle.

---

[3] The defendant appealed to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

Officer John Labbadia of the Middletown police department responded to the call and, at about 12 p.m., arrived at the Fraulino residence. Labbadia parked his cruiser in the driveway and, after conducting a cursory examination of the front of the house, proceeded to the backyard. The defendant and Browne, who had seen the cruiser arrive, ran out the front door to Browne's car and sped off, leaving behind much of what they had intended to remove from the house. Labbadia saw the two men and pursued them in his cruiser. He also radioed the police dispatcher, and other officers, including Connecticut state police troopers, subsequently joined the pursuit. Eventually, Browne, who was driving, entered Route 9 heading southbound and proceeded at a high rate of speed. Despite police efforts to stop Browne's vehicle,[4] Browne eluded capture[5] and, eventually, entered Interstate 95 heading southbound. Using "stop sticks"[6] between exits 59 and 58 of Interstate 95, the police finally caused two of Browne's tires to deflate. Browne ultimately brought his car to a stop near exit 54 in Branford, a distance of approximately forty-six miles from the Fraulino residence.[7] When the

---

[4] For example, the police deployed "stop sticks," which are strips containing hollow spikes that are laid across a highway by the police to stop fleeing vehicles. When a car passes over the strip, the attached spikes puncture the car's tires and deflate them. Several such efforts were unsuccessful, however, because Browne was able to veer away from the strips.

[5] On one such occasion, Labbadia, who had been able to position his cruiser in front of Browne's vehicle, decelerated in an attempt to thwart Browne's flight. Browne, however, swerved sharply away from Labbadia, toward the cruiser operated by Middletown police Sergeant George Dingwall, who had joined the chase. In his effort to avoid Browne's vehicle, Dingwall lost control of his cruiser and spun off the highway, striking a heavily wooded portion of the median. Tragically, the injuries that Dingwall had suffered as a result of the crash were fatal.

[6] See footnote 4 of this opinion.

[7] In addition to the fatal injuries that Dingwall suffered during the pursuit; see footnote 5 of this opinion; several other officers also were injured and their vehicles damaged as a result of the extremely dangerous, evasive measures that Browne had taken to elude the police.

two men were apprehended, the defendant was seated in the front passenger seat of Browne's vehicle. Several items that had been removed from the Fraulino residence were found inside and outside of Browne's vehicle.

After being placed under arrest, the defendant initially told police that he had remained in Browne's vehicle when Browne entered the residence. He then stated that he had been injecting heroin and was not sure whether he had gone into the house. According to the defendant, Browne told him that he needed to go to that home because a man who lived there owed Browne money.

The defendant and Browne both were charged with numerous offenses, including burglary in the first degree in violation of General Statutes § 53a-101 (a) (2).[8] The two men were tried separately, with Browne's trial proceeding first. Although Browne was convicted of multiple offenses, he was acquitted of burglary in the first degree.[9] *State* v. *Browne*, 84 Conn. App. 351, 354, 355 n.2, 854 A.2d 13, cert. denied, 271 Conn. 931, 859 A.2d 930 (2004).

Thereafter, the defendant's trial commenced. At the conclusion of the state's case, the defendant filed a motion for a judgment of acquittal with respect to the

---

[8] General Statutes § 53a-101 provides in relevant part: "(a) A person is guilty of burglary in the first degree when he enters or remains unlawfully in a building with intent to commit a crime therein and . . . (2) in the course of committing the offense, he intentionally, knowingly or recklessly inflicts or attempts to inflict bodily injury on anyone.

"(b) An act shall be deemed 'in the course of committing' the offense if it occurs in an attempt to commit the offense or flight after the attempt or commission. . . ."

[9] Browne received a total effective sentence of thirty-two years imprisonment. *State* v. *Browne*, 84 Conn. App. 351, 354–55 n.2, 854 A.2d 13, cert. denied, 271 Conn. 931, 859 A.2d 930 (2004). His convictions subsequently were affirmed on appeal. Id., 395.

charge of burglary in the first degree.[10] In support of his motion, the defendant claimed that the state's evidence was insufficient to prove the second prong of § 53a-101 (a) (2), namely, that he intentionally, knowingly or recklessly had inflicted or attempted to inflict bodily injury on one or more of the pursuing police officers as alleged in the information. Specifically, the defendant maintained that, although the state's evidence may have implicated Browne, the driver of the getaway car, in such conduct, there was no evidence to indicate that the defendant, as a passenger in the getaway car, had injured or attempted to injure any of the pursuing officers. The defendant also claimed that the state was foreclosed by principles of collateral estoppel from proceeding against him on that charge under the doctrine of *Pinkerton* v. *United States*, 328 U.S. 640, 646–48, 66 S. Ct. 1180, 90 L. Ed. 1489 (1946), which permits the state to hold a conspirator vicariously liable for the criminal offenses committed by a coconspirator if those offenses "are within the scope of the conspiracy, are in furtherance of it, and are reasonably foreseeable as a necessary or natural consequence of the conspiracy."[11] (Internal quotation marks omitted.) *State* v. *Garner*, 270 Conn. 458, 484, 853 A.2d 478 (2004). In particular, the defendant maintained that the state was collaterally estopped from establishing the second prong of § 53a-101 (a) (2) under a theory of vicarious liability because the evidence adduced by the state to prove that element of the offense derived entirely from the conduct of Browne, who previously had been acquitted of that charge.

The trial court granted the defendant's motion for a judgment of acquittal of burglary in the first degree

[10] In that motion, the defendant also sought a judgment of acquittal with respect to certain other charges that are not relevant to this appeal.

[11] This court has adopted the *Pinkerton* principle of vicarious liability for purposes of our state criminal law. See, e.g., *State* v. *Peeler*, 271 Conn. 338, 361–63, 857 A.2d 808 (2004).

with respect to two of the three theories of liability that the state had advanced in support of that charge, namely, principal liability[12] and accessorial liability.[13] The trial court, however, rejected the defendant's collateral estoppel argument and, therefore, denied the defendant's motion for a judgment of acquittal on the charge of burglary in the first degree insofar as the state's case against the defendant on that charge was predicated on a theory of vicarious liability under the *Pinkerton* doctrine. Accordingly, the trial court instructed the jury under that doctrine. The court also instructed the jury on the lesser included offense of burglary in the third degree. See General Statutes § 53a-103 (a).[14]

---

[12] With respect to the state's theory of principal liability, the court concluded that the evidence adduced by the state was insufficient to prove that the defendant, himself, intentionally, knowingly or recklessly had inflicted or attempted to inflict bodily injury on one or more of the pursuing police officers because there was no evidence to indicate that the defendant had operated Browne's vehicle during the course of the police chase or otherwise had engaged in any other acts that could have been construed as an attempt to inflict bodily injury on one or more of the pursuing officers.

[13] The statutory provision governing accessorial liability is General Statutes § 53a-8, which provides in relevant part: "(a) A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender. . . ."

This court previously has stated that "a conviction under § 53a-8 requires [the state to prove the defendant's] dual intent . . . [first] that the accessory have the intent to aid the principal and [second] that in so aiding he intend to commit the offense with which he is charged." (Internal quotation marks omitted.) *State* v. *Turner*, 252 Conn. 714, 748, 751 A.2d 372 (2000). Thus, in order to establish the defendant's accessorial liability for burglary in the first degree under § 53a-101 (a) (2), the state was required to prove, inter alia, that the defendant had the intent to inflict or to attempt to inflict bodily injury on one or more of the police officers involved in the pursuit of Browne's vehicle. The trial court concluded, however, that the evidence adduced by the state was insufficient to prove that element of the offense.

[14] General Statutes § 53a-103 (a) provides: "A person is guilty of burglary in the third degree when he enters or remains unlawfully in a building with intent to commit a crime therein."

At the conclusion of the trial, the jury found the defendant not guilty of burglary in the first degree but found the defendant guilty of the lesser included offense of burglary in the third degree.[15] The defendant thereafter filed a motion for a judgment of acquittal on the offense of burglary in the third degree. In support of his motion, the defendant once again claimed that the state was collaterally estopped from proceeding against him on the charge of burglary in the first degree under the *Pinkerton* doctrine and that, consequently, the jury should not have been permitted to consider the lesser included offense of burglary in the third degree. The trial court denied the defendant's motion. On appeal, the defendant renews the claim of collateral estoppel that he raised in the trial court.[16]

---

[15] Because the trial court properly instructed the jury in accordance with *State* v. *Sawyer*, 227 Conn. 566, 583, 630 A.2d 1064 (1993) (jury must be instructed that, before considering any lesser included offenses, it first must decide guilt or innocence of accused as to greater offense), the jury's finding of not guilty with respect to the charge of burglary in the first degree is implicit in its finding of guilty with respect to the offense of burglary in the third degree.

[16] Before addressing the merits of the defendant's claim, we note, preliminarily, that the defendant does not contend that the evidence was insufficient to support his conviction of burglary in the third degree. Rather, his claim is limited to the assertion that the jury should not have been permitted to consider the charge of burglary in the third degree as a lesser included offense of burglary in the first degree because the state was barred, under principles of collateral estoppel, from proceeding against him on that greater charge.

We further note that the defendant's claim is predicated on the fact that the information charged the defendant with one count of burglary in the first degree and did not contain a count charging him with burglary in the third degree. Rather, as we have explained, the trial court instructed the jury on the charge of burglary in the third degree as a lesser included offense of burglary in the first degree. Thus, as the defendant recognizes, if the information had contained a count charging him with burglary in the third degree, he would have no claim that his conviction on that charge was improper. Moreover, even if the defendant could prevail on his claim that the state was collaterally estopped from prosecuting him for the offense of burglary in the first degree, it is by no means clear that the defendant was harmed as a result of his conviction of burglary in the third degree because he was on notice that the state could charge him with that offense and that

"The common-law doctrine of collateral estoppel, or issue preclusion, embodies a judicial policy in favor of judicial economy, the stability of former judgments and finality. . . . Collateral estoppel means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. . . . Issue preclusion arises when an issue is actually litigated and determined by a valid and final judgment, and that determination is essential to the judgment. . . . Collateral estoppel express[es] no more than the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest."[17] (Internal quotation marks omitted.) *Cumberland Farms, Inc.* v. *Groton*, 262 Conn. 45, 58, 808 A.2d 1107 (2002). Generally, "[a]pplication of the doctrine of collateral estoppel is neither statutorily nor constitutionally mandated." Id. With respect to criminal cases, however, "collateral estoppel is a protection included in the fifth amendment guarantee against double jeopardy."[18] (Internal quotation marks omitted.) *State* v. *Garner*, supra, 270 Conn. 482. "The constitution embodies this doctrine [however] only to the extent

---

he could be convicted of that offense. The state has not raised that issue in its defense of this appeal, however, and we do not address it further.

[17] "In other words, [the doctrine of] collateral estoppel precludes a party from relitigating issues and facts actually and necessarily determined in an earlier proceeding between the same parties or those in privity with them upon a different claim. . . . An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . An issue is *necessarily determined* if, in the absence of a determination of the issue, the judgment could not have been validly rendered. . . . If an issue has been determined, but the judgment is not dependent upon the determination of th[at] issue, the parties may relitigate the issue in a subsequent action." (Emphasis in original; internal quotation marks omitted.) *Cumberland Farms, Inc.* v. *Groton*, supra, 262 Conn. 58 n.17.

[18] The fifth amendment guarantee against double jeopardy is made applicable to state prosecutions through the due process clause of the fourteenth amendment. *Benton* v. *Maryland*, 395 U.S. 784, 794, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969).

that it precludes a retrial of a *defendant*." (Emphasis in original.) Id.

In the present case, because the defendant was tried only once on the charge of burglary in the first degree, he does not claim that double jeopardy principles barred the state from prosecuting him for that offense. Rather, he contends that the purposes of the doctrine of collateral estoppel would be served by prohibiting the state from trying him on that charge because the state sought to hold him vicariously liable for the acts of an alleged coconspirator who previously had been acquitted of the charge.

We have recognized, however, that "the application of the collateral estoppel doctrine has dramatic consequences for the party against whom the doctrine is applied. [Consequently] [c]ourts should be careful that the effect of the doctrine does not work an injustice. . . . Thus, [t]he [doctrine] . . . should be flexible and must give way when [its] mechanical application would frustrate other social policies based on values equally or more important than the convenience afforded by finality in legal controversies." (Citation omitted; internal quotation marks omitted.) *Cumberland Farms, Inc.* v. *Groton*, supra, 262 Conn. 59–60. We are persuaded that overriding policy considerations militate against applying the doctrine to the present case.

As we have stated in the closely related context of conspiratorial liability under General Statutes § 53a-48,[19] "[w]hen coconspirators are tried separately, the acquittal of one on charges of conspiracy should not dictate the acquittal of the other simply because the state in one case has failed to prove an element necessary to a conspiracy charge. . . . The acquittal of a

---

[19] General Statutes § 53a-48 provides in relevant part: "(a) A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy. . . ."

codefendant in a separate trial could . . . [result] from a multiplicity of factors completely unrelated to the actual existence of a conspiracy . . . for example, certain evidentiary issues that might render evidence inadmissible in one trial but not in another. . . . In separate trials, [t]he evidence presented to the juries and the manner in which that evidence is presented may be significantly different and certainly never will be identical. . . . As a result, [d]ifferent juries may rationally come to different conclusions, especially when differing evidence is presented. . . .

"An . . . unsuccessful prosecution of an alleged coconspirator in a separate trial means nothing more than that on a given date the prosecution failed to meet its burden of proving the defendant guilty beyond a reasonable doubt of all of the elements constituting conspiracy. It certainly does not mean . . . that a conspiracy did not occur. It has long been recognized that criminal juries in the United States are free to render not guilty verdicts resulting from compromise, confusion, mistake, leniency or other legally and logically irrelevant factors. . . . Consequently, an acquittal is not to be taken as the equivalent of a finding of the fact of innocence; nor does it necessarily even reflect a failure of proof on the part of the prosecution." (Citations omitted; internal quotation marks omitted.) *State* v. *Colon*, 257 Conn. 587, 602–603, 778 A.2d 875 (2001).

This reasoning applies with equal force in the present context. Indeed, for purposes of the applicability of the doctrine of collateral estoppel, we see no material distinction between an accused who, like the defendant in *Colon*, was charged with conspiracy after his alleged coconspirator was acquitted of conspiracy at a separate trial, and an accused who, like the defendant in the present case, was charged with a substantive offense under the *Pinkerton* doctrine after his coconspirator was acquitted of that substantive offense at a separate trial. In neither scenario should the prior acquittal of

one alleged coconspirator bar the state from prosecuting a second alleged coconspirator because the acquittal of the first alleged coconspirator may have been wholly unrelated to that coconspirator's actual guilt or innocence.

Our conclusion, moreover, is consistent with the determination of the legislature, as reflected in General Statutes § 53a-9,[20] that an accused may be convicted of being an accessory under General Statutes § 53a-8; see footnote 13 of this opinion; even though the principal has been acquitted in a separate trial. This legislative mandate undoubtedly is predicated on the same general policy reasons that led us to conclude in *Colon* that an accused may be prosecuted for conspiracy notwithstanding his coconspirator's prior acquittal on that charge. See *State* v. *Colon*, supra, 257 Conn. 603. Because those considerations are no less persuasive in the present case, we reject the defendant's contention that Browne's acquittal on the charge of burglary in the first degree precluded the state from subsequently prosecuting the defendant for that offense under the *Pinkerton* doctrine. In view of the fact that the state was free to charge the defendant with burglary in the first degree, the trial court properly denied the defendant's motion for a judgment of acquittal on the lesser included offense of burglary in the third degree.[21]

The judgments are affirmed.

In this opinion the other justices concurred.

---

[20] General Statutes § 53a-9 provides in relevant part: "In any prosecution for an offense in which the criminal liability of the defendant is based upon the conduct of another person under section 53a-8 it shall not be a defense that . . . (2) such other person has not been prosecuted for or convicted of any offense based upon the conduct in question, or *has been acquitted thereof*, or has legal immunity from prosecution therefor . . . ." (Emphasis added.)

[21] The defendant relies primarily on *State* v. *Hope*, 215 Conn. 570, 577 A.2d 1000 (1990), cert. denied, 498 U.S. 1089, 111 S. Ct. 968, 112 L. Ed. 2d 1054 (1991), and *Aparo* v. *Superior Court for the Judicial District of Hartford/ New Britain at Hartford*, 956 F. Sup. 118 (D. Conn. 1996), aff'd mem., 129

F.3d 113 (2d Cir.), cert. denied, 522 U.S. 967, 118 S. Ct. 414, 139 L. Ed. 2d 317 (1997), to support his contrary contention. *Hope* and *Aparo* are inapposite, however, because each involved a claim that a subsequent prosecution of the defendant was barred by the collateral estoppel branch of double jeopardy jurisprudence; see *Aparo* v. *Superior Court for the Judicial District of Hartford/New Britain at Hartford,* supra, 121–22; *State* v. *Hope,* supra, 589; which, as we have explained, is not implicated by the claim that the defendant raises in the present case.

The defendant also notes that at least two other jurisdictions have applied the doctrine of collateral estoppel in a criminal case to bar the state from relitigating a factual issue decided adversely to the state in a prior proceeding involving a different defendant. See *People* v. *Taylor,* 12 Cal. 3d 686, 527 P.2d 622, 117 Cal. Rptr. 70 (1974); *State* v. *Gonzalez,* 75 N.J. 181, 380 A.2d 1128 (1977). For the reasons set forth previously, we do not find these cases to be persuasive.