STATE OF CONNECTICUT *v.* RHONDELL BONNER
(AC 28538)

DiPentima, Harper and West, Js.

Argued May 21—officially released September 30, 2008

*Christopher Y. Duby*, special public defender, for the appellant (defendant).

*Margaret Gaffney Radionovas*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Robin D. Krawczyk*, senior assistant state's attorney, for the appellee (state).

*Opinion*

HARPER, J. The defendant, Rhondell Bonner, appeals from the judgment of conviction, rendered after a jury trial, of possession of narcotics in violation of General Statutes § 21a-279 (a) and possession of narcotics within 1500 feet of a school in violation of General Statutes § 21a-279 (d).[1] The defendant claims that the

---

[1] General Statutes § 21a-279 (a) sets forth penalties for the illegal possession of any quantity of any narcotic substance. Section 21a-279 (d) provides in relevant part: "Any person who violates subsection (a) . . . of this section in or on, or within one thousand five hundred feet of, the real property comprising a public or private elementary or secondary school and who is not enrolled as a student in such school . . . shall be imprisoned for a term of two years, which shall not be suspended and shall be in addition and consecutive to any term of imprisonment imposed for violation of subsection (a) . . . of this section."

The court imposed a total effective sentence of six years imprisonment. The jury found the defendant not guilty of two additional counts, namely, possession of narcotics with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b) and possession of narcotics with intent to sell within 1500 feet of a school in violation of General Statutes § 21a-278a (b).

trial court improperly (1) failed to hold an evidentiary hearing related to his motion to suppress evidence, (2) denied his motion to suppress evidence and (3) denied his motion for a judgment of acquittal.[2] We affirm the judgment of the trial court.

On the basis of the evidence presented at trial, the jury reasonably could have found the following facts. In the early afternoon of January 7, 2003, Andrew Jacobson, a Hartford police officer, was on patrol duty in his police cruiser. A police dispatcher provided information to Jacobson via his police radio that the defendant, who was wanted for questioning, was a passenger in a red Ford Probe, bearing out-of-state license plates, which was being operated on Albany Avenue. Soon thereafter, Jacobson observed an automobile matching this description enter the driveway of a gasoline station and stop alongside a gasoline pump. The station was located on Albany Avenue, within 1500 feet of a middle school at which the defendant was not enrolled as a student.

Jacobson drove his cruiser into the driveway of the station and observed a person, whom he suspected was the defendant, in the front passenger seat of the automobile. Jacobson parked his cruiser, and as he exited the cruiser, the defendant extended his hands from the automobile and stated, "I'm Rhondell." The defendant complied with Jacobson's request to exit the automobile. Jacobson placed handcuffs on the defendant and conducted a patdown search of the defendant that yielded a cellular telephone, $126.25 and several small pieces of paper that bore the word "Cream," which is a nickname used by the defendant, as well as a telephone number.

---

[2] In his principal brief, the defendant also claims that the court improperly permitted the state to introduce portions of a statement he made to the police. During argument before this court, the defendant withdrew this claim.

After additional officers arrived and the driver, as well as two other passengers, had exited the automobile, Jacobson searched the automobile. On the floor of the automobile in the vicinity of the front passenger seat, Jacobson discovered and seized a clear plastic bag containing a white, rock like substance similar in appearance to crack cocaine.[3] The defendant was transported to the Hartford police department, where he was interviewed by police detectives. Prior to being interviewed, the defendant, complying with a request to give the police any items on his person, removed from his rear waistband a small plastic bag that contained a white, rock like substance. Subsequent testing revealed that one of the bags seized by the police contained a substance that included 1.31 grams of cocaine and that the other bag contained 1.23 grams of nicotinamide, a vitamin that is sometimes used as a "cutting agent" in the cocaine trade. During the course of a police interview, the defendant stated that he had been "picked up with some cocaine earlier in the day" and that he had sold cocaine in the vicinity of Albany Avenue just days earlier. Additional facts will be set forth as necessary.

I

First, the defendant claims that the court violated his right to due process, under the federal and state constitutions, when it declined to hold an evidentiary hearing related to his motion to suppress evidence. We disagree.

On July 5, 2006, the defendant filed a motion to suppress evidence that he alleged was obtained illegally by the police following his arrest on January 7, 2003.

---

[3] Additionally, the police discovered a plastic bag that contained a white, rock like substance on the floor of the automobile in the vicinity of the driver's seat. The police attributed this substance to the female driver of the automobile. In yet another area of the automobile's interior, the police discovered a white, rock like substance and a pipe, both of which were attributed to a male passenger other than the defendant.

The motion stated: "The evidence in this case was obtained as a result of a warrantless arrest of the [d]efendant, and the subsequent warrantless search of his person and the automobile which he was allegedly operating. The arrest and subsequent search were done without probable cause to believe that the [d]efendant had committed any crime."

On November 15, 2006, during jury selection, the defendant's attorney reminded the court that he had filed a motion to suppress the drugs seized by police from the automobile and the defendant. The defendant's attorney requested a hearing related to that motion. The defendant's attorney also informed the court that in a separate proceeding in which the defendant stood trial for murder, the defendant's attorney had filed a motion to suppress statements made by the defendant to the police following his arrest on January 7, 2003, and that the court in that proceeding, *Espinosa, J.,* had denied the motion to suppress. The court noted that because of the denial of the motion to suppress in the earlier proceeding, the defendant's motion could present an issue of collateral estoppel. The court stated that it would consider the issue after reviewing the file from the earlier proceeding, including Judge Espinosa's ruling.

The following day, November 16, 2006, the court informed the parties that it had reviewed Judge Espinosa's decision and that it appeared that Judge Espinosa had made factual findings on which she determined that the defendant's arrest on January 7, 2003, was lawful. The defendant's attorney disagreed that the earlier ruling had any preclusive effect on the present motion to suppress. He argued that the issue before Judge Espinosa was whether the defendant's statement to police following his arrest should be suppressed because the statement was the result of improper police coercion and that in the present case, the motion to

suppress focused on the legality of the defendant's arrest. The defendant's attorney argued that to the extent that Judge Espinosa made any determinations concerning the legality of the arrest, they were unnecessary to a resolution of the issue before the court. The court disagreed with this characterization of Judge Espinosa's ruling, noting that the defendant's trial attorney in the earlier proceeding had, in fact, argued that the arrest was illegal. The court stated that on the following day, it would permit the defendant to present evidence "to make a record to show that Judge Espinosa's findings were not necessarily decided."

On November 17, 2006, the court revisited the issue. The defendant's attorney claimed that the defendant's arrest was illegal because it occurred without probable cause. The defendant's attorney argued that the discovery of drugs in the passenger area of the automobile did not give rise to probable cause to suspect that the defendant possessed the drugs. He argued: "There were a number of people in the car. The officer had . . . not kept an eye on the people in the car while he was taking [the defendant] out of the car." The defendant's attorney argued that for these reasons, the drugs and "everything that follows" should be suppressed as the fruit of police illegality.

The court read aloud from Judge Espinosa's ruling, reciting factual findings that related directly to the circumstances of the defendant's arrest at the gasoline station on January 7, 2003. The court noted that on the basis of these detailed findings, Judge Espinosa concluded that "the cocaine that was found in the foot area of the car where the defendant was seated was in plain view [of the police], and there was probable cause to arrest him. Consequently, the search of the defendant's person at the scene and at the police station were justified as incident to his arrest."

The court stated: "[I]t's clear to me that Judge Espinosa has found the very things which you're arguing. [W]hat today was for, as I understood it, was to give you a chance to show me why the findings as to the legality of the arrest were not necessarily decided, were not necessarily included in what Judge Espinosa had to decide. I think we're all in agreement that if a decision about the legality of [the defendant's] arrest has been made by Judge Espinosa in another trial of [the defendant], then you're estopped from raising it at this trial because it's already decided."

The defendant's attorney stated that another hearing concerning the legality of the arrest was warranted because Judge Espinosa's findings were not binding on the court. The defendant's attorney argued that the drugs at issue in the present case were not evidence in the murder trial. He argued that the subject of the earlier motion to suppress, before Judge Espinosa, was the defendant's statement to the police. He argued that it was not necessary for Judge Espinosa to determine whether the defendant's arrest was lawful because the motion to suppress "could very well" have been denied on a finding that the defendant's statement to the police was knowing and voluntary.

The court ruled as follows: "I have gone through the transcripts, and it's clear to me what occurred at [the defendant's] previous hearing on the motion to suppress his statement in his previous trial. . . . [A]n issue is actually litigated if it is properly raised in the pleadings or otherwise submitted for determination and, in fact, determined. . . . [T]he issue of the legality of the arrest was raised by the defense in the murder trial of [the defendant]. It was actually litigated, it was submitted for determination and, in fact, determined by Judge Espinosa. For that reason, the doctrine of collateral estoppel does apply or perhaps even res judicata. But . . . whether it's issue preclusion or claim preclusion,

the defense is not entitled to a hearing on that very same factual issue. And so the request for a hearing on the motion to suppress is denied. The motion to suppress is also denied."

The defendant claims that his due process rights, under the state and federal constitutions, were violated by the court's denial of his request for an evidentiary hearing related to his motion to suppress evidence. He argues: "Without a hearing, there was no way to determine if the evidence used against him was obtained illegally and in contravention of his federal or state constitutional right to be free of having the state use illegal evidence against him. . . . The defendant was without an opportunity to present any facts to the trial court—which could have been used by this tribunal in assessing the trial court's decision to deny the defendant's motion to suppress, had any been found by the court—and therefore without an opportunity to even attempt to establish a record of facts in this case."

The defendant argues that material differences existed between the evidence considered by Judge Espinosa and that considered by the jury during the trial in the present case. On the basis of these differences, he posits that had the court considered the evidence presented at trial at a hearing on his motion to suppress, it may have found a factual basis on which to grant his motion, one that was not presented to Judge Espinosa. The defendant also argues that the court lacked discretion to deny his request for a hearing because General Statutes § 54-33f afforded him an absolute right to present evidence in support of his motion. Additionally, the defendant claims that the court improperly applied the doctrine of collateral estoppel because, in contrast with the present case, the trial before Judge Espinosa concerned unrelated criminal charges, and the subject of the suppression hearing was his statements to the police, not the drugs seized from the automobile or his

person. The defendant also claims that the doctrine of collateral estoppel cannot be applied properly in the context of this case, in the state's favor, because, in the criminal law context, the doctrine properly may be invoked only to protect a defendant's right against double jeopardy.

In denying the defendant's request for a hearing, the court relied on the doctrine of collateral estoppel. "The principle of collateral estoppel means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. . . . [C]ollateral estoppel precludes a party from relitigating issues and facts *actually* and *necessarily* determined in an earlier proceeding between the same parties or those in privity with them upon a different claim. . . . If an issue has been determined, but the judgment is not dependent upon the determination of the issue, the parties may relitigate the issue in a subsequent action. . . . For collateral estoppel to apply, the issue concerning which relitigation is sought to be estopped must be identical to the issue decided in the prior proceeding. . . .

"An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered. . . . We review collateral estoppel claims de novo." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Joyner*, 255 Conn. 477, 489–90, 774 A.2d 927 (2001).

First, we reject the defendant's general assertion that in a criminal prosecution, a court may not apply the doctrine of collateral estoppel in the state's favor but

only to protect a defendant's right against double jeopardy. The defendant has not cited any relevant authority in support of this assertion, and we are not aware of any such authority. Surely, in criminal cases, the doctrine has a constitutionally protected application in that "collateral estoppel is a protection included in the fifth amendment guarantee against double jeopardy." (Internal quotation marks omitted.) *State* v. *Santiago*, 275 Conn. 192, 201, 881 A.2d 222 (2005). This court has observed that collateral estoppel is based on "the public policy that a party should not be able to relitigate a matter which it already had an opportunity to litigate" and the principle that "once a matter has been fully and fairly litigated, and finally decided, it comes to rest." (Internal quotation marks omitted.) *State* v. *Jones*, 98 Conn. App. 695, 700–701, 911 A.2d 353 (2006), cert. denied, 281 Conn. 916, 917 A.2d 1000 (2007). This court further observed: "It is well settled that the principles of collateral estoppel and res judicata apply to criminal as well as to civil cases." Id., 701. Similarly, our Supreme Court has stated: "[Collateral estoppel] is that aspect of the doctrine of res judicata which serves to estop the relitigation by parties and their privies of any right, fact or legal matter which is put in issue and has been once determined by a valid and final judgment of a court of competent jurisdiction. . . . In principle, the doctrine of collateral estoppel applies to criminal as well as civil proceedings." (Citations omitted; internal quotation marks omitted.) *State* v. *Fritz*, 204 Conn. 156, 172, 527 A.2d 1157 (1987), overruled in part on other grounds by *State* v. *Crawford*, 257 Conn. 769, 779–80 & n.6, 778 A.2d 947 (2001), cert. denied, 534 U.S. 1138, 122 S. Ct. 1086, 151 L. Ed. 2d 985 (2002).

Second, we conclude that the court properly applied the doctrine in light of the particular facts of this case. Our careful review of both the proceedings before Judge Espinosa and the matters before the court in the present

case reveals that the issue of whether the police acted with probable cause in arresting the defendant on January 7, 2003, was determined by a valid and final judgment in the proceeding before Judge Espinosa. The issue was actually litigated in the prior proceeding: the defendant raised the issue and submitted the issue for determination in his motion to suppress, and the court resolved the issue on its merits. The issue was necessarily litigated in the prior proceeding: in support of his motion to suppress his statement to police, the defendant claimed that the statement should be suppressed as the fruit of an illegal arrest and that his statement was not knowing and voluntary. The court could not have denied the defendant's motion to suppress without rejecting the defendant's claim that the statements were the fruit of police illegality related to his arrest.

It does not affect our analysis that the prior proceeding concerned criminal charges different from those at issue in the present case or that the evidence at issue in the prior suppression hearing was the defendant's statements to the police, rather than the drugs seized by the police. The identical and integral issue in ruling on the motion to suppress in both cases was whether the police acted with probable cause in arresting the defendant. The issue was decided in the first proceeding under the same legal principles that applied in the present proceeding, regardless of the crimes with which the defendant stood charged. The motions at issue concerned different fruits of police activity, but the same police activity was the subject of both motions to suppress. Thus, we conclude that the issue was identical in both proceedings and actually and necessarily determined.

Additionally, our conclusion that collateral estoppel applied alleviates the constitutional concerns raised by the defendant. Contrary to the defendant's claim, he was not deprived of his statutory right to present evidence

in support of his motion to suppress and, thereby, to challenge the constitutionality of his arrest. The record before us reflects that he availed himself of this right before Judge Espinosa. When afforded a full and fair opportunity in the present case to persuade the court that the factual issues related to his motion to suppress were not necessarily decided before Judge Espinosa, the defendant failed to demonstrate that this was the case. Accordingly, we conclude that the court properly determined that collateral estoppel applied and denied the request for a hearing.

## II

The defendant next claims that the court improperly denied his motion to suppress. We disagree.

"Under the exclusionary rule, evidence must be suppressed if it is found to be the fruit of prior police illegality. . . . On appeal, we apply a familiar standard of review to a trial court's findings and conclusions in connection with a motion to suppress. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record. . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision. . . . Whether the trial court properly found that facts submitted were enough to support a finding of probable cause is a question of law. . . . Because a trial court's determination of the validity of a . . . search [or seizure] implicates a defendant's constitutional rights, however, we engage in a careful examination of the record to ensure that the court's decision was supported by substantial evidence. . . . However, [w]e . . . give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses." (Internal

quotation marks omitted.) *State* v. *Garcia*, 108 Conn. App. 533, 543–44, 949 A.2d 499 (2008).

In part I, we rejected the defendant's claim that the court improperly denied his request for a hearing. We concluded that the court properly determined that the defendant was collaterally estopped from relitigating the issue raised in his motion to suppress and properly declined to hold an evidentiary hearing related to that issue. Having concluded that collateral estoppel applied and barred the relitigation of this issue, which was resolved during the prior trial, we likewise conclude that the court properly denied the defendant's motion to suppress. Judge Espinosa unambiguously rejected the defendant's claim that his arrest was illegal. In the present case, the court declined to revisit the issue and, accordingly, did not make any factual findings related to it. The court's reliance on Judge Espinosa's ruling in denying the defendant's motion to suppress was legally and logically correct; the prior ruling was dispositive of the issue raised in the defendant's motion.

## III

Next, the defendant claims that the court improperly denied his motion for a judgment of acquittal. We disagree.

At the close of the evidentiary phase of the trial, the defendant moved for a judgment of acquittal as to all of the charges of which he stood accused. As relevant to the claims raised on appeal, the defendant's attorney argued that there was no evidence to support a finding that the defendant possessed the rock like substance found in the automobile. Further, he argued that the state did not present evidence as to whether the substance found in the automobile *or* the substance that the defendant turned over to the police prior to questioning contained cocaine, only that one of those substances contained cocaine. The defendant's attorney argued

that on these facts, the jury could reach a guilty verdict only by speculating that the substance the defendant turned over to police was the substance containing cocaine.

The court noted that because the state did not present evidence from which the jury reasonably could determine which of the two substances at issue contained cocaine, it likely would instruct the jury that it could return a guilty verdict only if it found that the defendant possessed *both* of the substances.[4] Thereafter, the court denied the defendant's motion.

On appeal, the defendant reiterates the arguments he raised before the trial court. The defendant does not argue that the evidence did not support a finding that he possessed the substance that he turned over to the police prior to questioning or that one of the two substances seized by the police contained cocaine. Instead, he argues that the state did not prove beyond a reasonable doubt that he possessed the substance found by police on the floor of the automobile. In this regard, he argues that the evidence reflected that the substance

---

[4] The court revisited this issue the next day, during its charging conference. Later, during the jury charge, the court instructed the jury with regard to the element of possession. As part of this instruction, it instructed the jury in relevant part: "You have testimony about two quantities of substance that some of the evidence indicates were found. One substance that was handed, so the evidence says if you accept it, by [the defendant] to the detective before entering the interrogation room at the police station. And the second quantity that was found, according to the testimony, in the car where [the defendant] was [a] passenger before being removed from the car by the police officer.

"You heard all the testimony, and remember you're free to disregard my comments about the evidence. The point I wish to make, though, is because only one of those packets, as the testimony indicates, contained cocaine, again, if you accept that testimony, you must find beyond a reasonable doubt that the defendant possessed both the packet that was taken from the passenger seat floor of the car, as the evidence shows, and the packet that he handed to the detective before going into the interrogation room at the Hartford police station. Otherwise, you'd be unable to tell which was the real substance."

was found in a "common area" within the automobile, he was merely a passenger in the automobile, there were other passengers in the automobile, the substance was not found among his personal possessions, he had not made any "furtive movements" as the officer approached him, he had not uttered any "incriminating statements" to the officer who approached him, he "made no admissions that he was in possession of any illegal substance on the day of his arrest," and no other incriminating facts supported an inference that he was in possession of the substance. The defendant argues that because there also was no evidentiary basis to conclude that the substance he turned over to the police contained cocaine, there was no evidentiary basis to support a finding that he possessed cocaine.

"The standard of appellate review of a denial of a motion for a judgment of acquittal has been settled by judicial decision. . . . The issue to be determined is whether the jury could have reasonably concluded, from the facts established and the reasonable inferences which could be drawn from those facts, that the cumulative effect was to establish guilt beyond a reasonable doubt . . . . The facts and the reasonable inferences stemming from the facts must be given a construction most favorable to sustaining the jury's verdict. . . . It is established case law that when a defendant challenges the sufficiency of the evidence, we apply a twofold test. We first review the evidence . . . in the light most favorable to sustaining the jury's verdict. We then determine whether, upon the facts thus established and the inferences reasonably drawn . . . the jury could reasonably have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt . . . . In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence

that is circumstantial rather than direct." (Citation omitted; internal quotation marks omitted.) *State* v. *Hamlett*, 105 Conn. App. 862, 866, 939 A.2d 1256, cert. denied, 287 Conn. 901, 947 A.2d 343 (2008).

Possession is an essential element common to both crimes with which the defendant stands convicted. See General Statutes § 21a-279 (a) and (d). The defendant's claim may be resolved by determining whether the state proved beyond a reasonable doubt that the defendant possessed both the substance that he turned over to the police prior to his interview and the substance found by the police on the floor of the automobile near the passenger's seat. If the evidence reasonably permitted such findings, the jury reasonably could have concluded that the defendant possessed cocaine at the place and time of his arrest on January 7, 2003.

"[T]o prove illegal possession of a narcotic substance, it is necessary to establish that the defendant knew the character of the substance, knew of its presence and exercised dominion and control over it. . . . Where . . . the [narcotics were] not found on the defendant's person, the state must proceed on the theory of constructive possession, that is, possession without direct physical contact. . . . One factor that may be considered in determining whether a defendant is in constructive possession of narcotics is whether he is in possession of the premises where the narcotics are found. . . . Where the defendant is not in exclusive possession of the premises where the narcotics are found, it may not be inferred that [the defendant] knew of the presence of the narcotics and had control of them, unless there are other incriminating statements or circumstances tending to buttress such an inference. . . . While mere presence is not enough to support an inference of dominion or control, where there are other pieces of evidence tying the defendant to dominion and control, the [finder of fact is] entitled to consider the

fact of [the defendant's] presence and to draw inferences from that presence and the other circumstances linking [the defendant] to the crime." (Citation omitted; internal quotation marks omitted.) *State* v. *Martin*, 285 Conn. 135, 149–50, 939 A.2d 524 (2008).

The state presented testimony from Jacobson that when he came upon the automobile in the gasoline station parking lot, he observed four occupants: the defendant in the front passenger's seat, a female in the driver's seat and a female and a male in the backseat of the automobile. Jacobson testified that the defendant complied with his commands and that after all of the occupants had exited the automobile and the police had secured the automobile, he found "a clear plastic bag with some small white rocks in it," similar in appearance to crack cocaine, on the floor of the automobile "where [the defendant] was sitting." Jacobson further testified that a patdown search of the defendant yielded a cellular telephone, $126.25 and a number of pieces of paper which bore the name "Cream" and a telephone number. Jacobson testified that to his knowledge, "Cream" was the defendant's nickname.

The state also presented testimony from Winston Brooks, who was a detective with the Hartford police department in January, 2003. Brooks testified that he escorted the defendant to an interview room following his arrest and arrival at police headquarters. He testified that he asked the defendant to remove any items or contraband that he possessed and that the defendant removed from his rear waistband a plastic bag containing a white, rock like substance.

The state also presented testimony from Mark Fowler, a detective with the Hartford police department, who interviewed the defendant following the arrest. Fowler testified that the defendant made several incriminating statements. As relevant, Fowler testified

that the defendant stated that he had been "picked up with some cocaine earlier in the day." Fowler also testified: "[The defendant] told me during the course of the interview that on December 29, 2002, several days prior, that he was on Cabot Street selling cocaine." Fowler testified that Cabot Street intersects with Albany Avenue at the gasoline station where the defendant was arrested.

As set forth previously, the state presented evidence that one small plastic bag was discovered on the floor of the automobile and that the defendant removed a second small plastic bag from his clothing prior to his interview. The state presented evidence that one of these bags contained a substance that included cocaine, and the other contained a substance that is used as a cutting agent in the cocaine trade. As we have already observed, the defendant does not claim that the evidence did not permit a finding that he possessed the substance that he turned over to police at the police department or that one of the two substances seized by police contained cocaine.

On the basis of the evidence presented to the jury, we conclude that the jury reasonably could have found that the defendant constructively possessed the substance found in the automobile, as well. It is not disputed that the defendant was not in exclusive possession of the automobile. The evidence, however, included incriminating statements and circumstances that buttressed an inference that whether the substance was the cocaine or the cutting agent, the defendant knew the character of the substance found in the automobile, knew of its presence and that he exercised dominion and control over it. It was reasonable for the jury to find that police discovered items consistent with drug dealing in the defendant's possession, the most incriminating being the numerous slips of paper

inscribed with the defendant's nickname and a telephone number. It was also reasonable for the jury to infer from the evidence that the defendant had an opportunity to place the substance on the floor of the automobile when he observed Jacobson approaching the automobile prior to his arrest. The defendant's statements concerning his possession of cocaine earlier in the day, as well as his statements concerning his activities, just days earlier, in the area of his arrest, strongly buttressed an inference that the defendant possessed the substance found in the automobile.

Finally, the fact that the defendant gave the police another white, rock like substance, one that he stored in his rear waistband, before his interview is significant in evaluating whether he possessed a substance of similar appearance, similarly packaged, that was found in the automobile. The evidence established that of the two substances at issue, one contained cocaine and the other contained a cutting agent used in the preparation of cocaine for distribution. The jury reasonably could have found, and it is not in dispute, that the defendant possessed either the cocaine or the cutting agent at the police department. This finding made it entirely more likely that the defendant also possessed the substance found in the automobile.

The evidence, viewed as a whole, supported a finding that the defendant constructively possessed both bags containing rock like substances. A finding of constructive possession of the substance found in the automobile is amply supported by incriminating statements and circumstances and not merely by the temporal and spatial nexus between the defendant and the substance found in the automobile. Additionally, the evidence demonstrated that one of the substances in the bags seized by the police contained cocaine. We conclude, therefore, that the evidence necessarily permitted a finding that the defendant possessed cocaine.

The judgment is affirmed.

In this opinion the other judges concurred.