## STATE OF CONNECTICUT *v.* MCARTHUR WINFREY
### (SC 18716)

Rogers, C. J., and Norcott, Palmer, Zarella, McLachlan, Eveleigh and Harper, Js.

196

Argued April 20—officially released August 23, 2011

*James B. Streeto*, assistant public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Seth R. Garbarsky*, assistant state's attorney, for the appellee (state).

*Opinion*

ROGERS, C. J. The defendant, McArthur Winfrey, appeals[1] from the judgment of conviction, rendered after a jury trial, of one count of possession of narcotics in violation of General Statutes § 21a-279 (a), one count

---

[1] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

of possession of a controlled substance in violation of § 21a-279 (c), one count of interfering with an officer in violation of General Statutes § 53a-167a, and one count of tampering with physical evidence in violation of General Statutes § 53a-155. On appeal, the defendant claims that the trial court improperly: (1) violated his constitutional rights by denying his motion to suppress certain evidence taken from the motor vehicle that he was operating at the time of his arrest; (2) concluded that there was sufficient evidence to sustain his conviction on the possessory charges; (3) admitted his unredacted medical records into evidence; and (4) instructed the jury as to the state's burden of proof. We affirm the judgment of the trial court.

The record reveals the following facts that the jury reasonably could have found, and procedural history. On September 18, 2007, narcotics officers Mark Sheppard and Dennis Ryan, of the Hamden police department, were on patrol in full uniform in an unmarked police vehicle. After Sheppard observed that a car traveling in the opposite direction had no front license plate and that the driver of the vehicle, the defendant, was not wearing a seat belt, Ryan turned the police car around and followed the defendant to the parking lot of an apartment building, where the defendant had just finished backing into a parking spot. Ryan parked the police car hood to hood with the defendant's car. The defendant and his passenger, Stephen Goodwin, then exited the vehicle, at which time Sheppard approached the defendant and explained why the officers were there.

The defendant produced a Connecticut identification card but avoided answering Sheppard's questions and began nervously placing his hands inside his sweatshirt pockets and under his clothing, in a manner that made Sheppard apprehensive for his own safety. When the defendant refused to comply with Sheppard's order that

he keep his hands in view, Sheppard decided to conduct a *Terry* search.[2] The defendant verbally refused to allow Sheppard to pat him down and physically resisted the officer. With Ryan's assistance, Sheppard succeeded in placing the defendant's hands on the hood of a car, but when the patdown began the defendant twisted around and reached into his clothing. When Sheppard pulled the defendant's hand out of his pocket, a white package dropped on the ground. The package was a plastic bag containing five wax folds, each containing a powdery white substance that Sheppard believed to be heroin.

At that point the officers arrested the defendant for interfering with a police officer, and placed the package on the hood of a nearby car. Upon searching the defendant's person, the officers discovered rolling papers and $552 in cash. As the officers were leading the defendant to the patrol car, he again twisted out of their grasp. This time the defendant lunged onto the hood of the car where the officers had placed the suspected contraband, swallowed the entire package, laughed at the officers and said, "gotcha."

After the defendant and Goodwin had been placed in police cruisers, the officers searched the car the defendant had been driving.[3] In the center console of the car, they discovered two bags of crack cocaine and three bags of marijuana. The officers called for the car to be impounded, and transported the defendant to Yale-New Haven Hospital (hospital), because they believed he had swallowed the packaged heroin. At the hospital, the defendant was given a charcoal drink to neutralize any narcotics he had swallowed and to induce vomiting, but there is no indication that he regurgitated any evidence or exhibited any signs of overdose.

---

[2] See *Terry* v. *Ohio*, 392 U.S. 1, 21–22, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

[3] It is unclear from the record whether Ryan attempted to begin searching the vehicle before the defendant's recalcitrance required that he come to Sheppard's assistance.

The defendant was charged with the crimes of possession of narcotics with intent to sell, possession of a controlled substance, interfering with an officer, and tampering with physical evidence. Following a trial, the jury returned a verdict of guilty on the lesser included offense of possession of narcotics, and on the charged crimes of possession of a controlled substance, interfering with an officer and tampering with physical evidence. The trial court rendered judgment in accordance with the verdict and imposed a total effective sentence of seven years incarceration, followed by five years of special parole. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first contends that the officers violated his rights under both the state and federal constitutions[4] when they conducted a warrantless search of the automobile he was driving,[5] and, accordingly, that the trial court improperly denied his motion to suppress the evidence obtained from that search. We disagree.

We begin our analysis by setting forth the appropriate standard of review. "Our standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact

---

[4] The fourth amendment to the United States constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Article first, § 7, of the constitution of Connecticut provides: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."

[5] The defendant accurately informed the officers that the car he was driving was registered to his wife. For simplicity, we refer to it as the defendant's car.

will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . . Because [the present case] raise[s] questions of law, our review is plenary." (Internal quotation marks omitted.) *State* v. *Gonzalez*, 278 Conn. 341, 347–48, 898 A.2d 149 (2006).

We next consider the scope of the warrant requirement as applied to motor vehicle searches. "The police ordinarily may not conduct a search and make a seizure unless a neutral and detached magistrate first issues a warrant based on probable cause." *State* v. *Trine*, 236 Conn. 216, 235, 673 A.2d 1098 (1996). "[A] warrantless search and seizure is per se unreasonable, subject to a few well defined exceptions." (Internal quotation marks omitted.) *State* v. *Johnson*, 286 Conn. 427, 444, 944 A.2d 297, cert. denied, 555 U.S. 883, 129 S. Ct. 236, 172 L. Ed. 2d 144 (2008). "These exceptions have been jealously and carefully drawn . . . and the burden is on the state to establish the exception." (Internal quotation marks omitted.) Id., 434. Specifically, a warrantless search of an automobile may be deemed reasonable if it was: (1) made incident to a lawful arrest; (2) conducted when there was probable cause to believe that the car contained contraband or evidence pertaining to a crime; (3) based upon consent; or (4) conducted pursuant to an inventory of the car's contents incident to impounding the car. *State* v. *Reddick*, 189 Conn. 461, 467, 456 A.2d 1191 (1983).

In the present case, the defendant moved to suppress the evidence of drugs found during the officers' warrantless search of his car. The trial court, in denying the motion to suppress, found that the search of the defendant's car was a valid search incident to a lawful

arrest. The defendant concedes that in 2007, when the search occurred, Connecticut courts construed this exception to the warrant requirement broadly. He argues, however, that a recent United States Supreme Court case, *Arizona* v. *Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009), has limited the scope of the exception so that it would not have permitted the search of his car. He further contends that *Gant* should apply retroactively to his case, which was pending on direct appeal when *Gant* was decided.

The state responds that the search of the defendant's car was permissible as a search incident to a lawful arrest under the new *Gant* standards, and that, even if it was barred by *Gant*, the rationales underlying the exclusionary rule would not justify excluding the fruits of the search in the present case. In the alternative, the state contends that the search was justified by the automobile exception to the warrant requirement. Because we agree with the state that the search was permissible under the automobile exception, we need not determine whether the trial court's decision complied with *Gant*.

The United States Supreme Court first recognized the automobile exception to the fourth amendment warrant requirement in *Carroll* v. *United States*, 267 U.S. 132, 149, 45 S. Ct. 280, 69 L. Ed. 543 (1925), where the court explained that "if [a] search and seizure without a warrant are made upon probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid." Likewise, under our state constitution, "our automobile exception permits a warrantless search of an automobile whenever the police have probable cause to do so"; *State* v. *Dukes*, 209 Conn. 98, 120, 547 A.2d 10 (1988); as where "the searching officer[s] have probable cause to believe

that the vehicle contains contraband." Id., 126; but see subsequent discussion in this opinion of *State* v. *Miller*, 227 Conn. 363, 630 A.2d 1315 (1993). "The probable cause determination must be based on objective facts that could have justified the issuance of a warrant by a neutral magistrate at the time the search was made." *State* v. *Badgett*, 200 Conn. 412, 429, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986).

"The justification for . . . [this] automobile exception is twofold: (1) the inherent mobility of an automobile creates exigent circumstances; and (2) the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office." (Internal quotation marks omitted.) *State* v. *Smith*, 257 Conn. 216, 228–29, 777 A.2d 182 (2001). In recent years, the "United States Supreme Court has placed an increasing emphasis on the reduced expectation of privacy justification . . . [such] that [e]ven in cases where an automobile [is] not immediately mobile, the lesser expectation of privacy resulting from its use as a readily mobile vehicle justifie[s] application of the vehicular exception. Thus, under the fourth amendment, a warrantless vehicle search does not require a showing of exigent circumstances." (Citations omitted; internal quotation marks omitted.) Id., 229; see also *Maryland* v. *Dyson*, 527 U.S. 465, 466–67, 119 S. Ct. 2013, 144 L. Ed. 2d 442 (1999).

In the present case, the state contends, and we agree, that the officers, having observed the defendant discard and later swallow what appeared to be multiple doses of heroin, had probable cause to believe that additional contraband would be found in the car he had been driving. See *United States* v. *Wider*, 951 F.2d 1283, 1286 (D.C. Cir. 1991) (finding probable cause where defendant was on foot, drugs packaged for sale were found on his person and his car was parked nearby); *State* v.

*Dukes,* supra, 209 Conn. 125 ("once the officer had searched the defendant incident to a lawful arrest and found contraband, he then had probable cause to search the vehicle"); *State* v. *Wilson,* 111 Conn. App. 614, 625, 960 A.2d 1056 (2008) (possession of salable quantities of narcotics on defendant's person upon leaving vehicle gave police probable cause to believe vehicle contained additional contraband), cert. denied, 290 Conn. 917, 966 A.2d 234 (2009). The fact that the defendant had rolling papers and more than $550 in cash[6] gave the officers further cause to believe that his car would contain contraband.[7] See *United States* v. *Rowland,* 341 F.3d 774, 785 (8th Cir.) (discovery of rolling papers and other drug paraphernalia during *Terry* search provided probable cause to search vehicle), cert. denied, 540 U.S. 1093, 124 S. Ct. 969, 157 L. Ed. 2d 802 (2003); *United States* v. *Valentine,* 517 F. Sup. 2d 816, 821 (W.D. Va. 2007) (defendant's suspicious behavior during traffic stop, in tandem with passenger's possession of glass pipe and defendant's possession of large roll of cash, gave police probable cause to search vehicle), aff'd, 297 Fed. Appx. 266 (4th Cir. 2008); *Barraco* v. *State,* 244 Ga. App. 849, 851–53, 537 S.E.2d 114 (2000) (probable cause to search vehicle where driver possessed rolling papers, acted

---

[6] Although the trial court did not make explicit findings to this effect, the evidence in the record is uncontroverted, and the defendant himself describes the seizure of rolling papers and cash in his statement of facts. Accordingly, we may consider those facts in evaluating whether the police had probable cause to search the defendant's car. See *State* v. *Copeland,* 205 Conn. 201, 208 n.3, 530 A.2d 603 (1987). This is especially so where, as here, the trial court has expressly found the source of the testimony to be credible. See *State* v. *Wilson,* supra, 111 Conn. App. 622.

[7] In his reply brief, the defendant contends that finding suspected heroin on his person did not give the police probable cause to believe that his car would contain evidence of the crime of possession *with the intent to sell.* Even if this proposition is true, it is immaterial; the vehicle search was constitutional if police had probable cause to believe they would find evidence of *any* crime, not only the crimes for which the defendant was arrested or ultimately charged. *United States* v. *Coleman,* 458 F.3d 453, 458 (6th Cir. 2006).

nervously during traffic stop and admitted to personal marijuana use on other occasions).

In his reply brief, the defendant argues that the state's alternate ground for affirming the judgment under the automobile exception is: (1) barred by this court's decision in *State* v. *Miller*, supra, 227 Conn. 363; (2) unpreserved; or (3) waived. We consider each claim in turn.

First, the defendant, relying on *Miller*, argues that, even if the search of his car did not offend the federal constitution, it violated his rights under the constitution of Connecticut, which sets a higher bar for warrantless automobile searches. The state, while conceding that *Miller* restricted the scope of the automobile exception under the state constitution, contends that *Miller* does not control this case. We agree with the state.

We begin by noting that "[w]e may find greater protection of individual rights under our state constitution than that provided by the federal constitution." (Internal quotation marks omitted.) Id., 379. In *Miller*, we declined to follow the United States Supreme Court's decision in *Chambers* v. *Maroney*, 399 U.S. 42, 90 S. Ct. 1975, 26 L. Ed. 2d 419 (1970), in which that court interpreted the fourth amendment to permit a warrantless automobile search supported by probable cause and conducted while the automobile was in police control at a station house. Rather, we concluded in *Miller* that, once an automobile has been impounded at a police station, the factors that justify a warrantless search of the vehicle at the scene—the legitimate safety concerns of police officers and the inherent mobility of automobiles—cease to apply. *State* v. *Miller*, supra, 227 Conn. 383–86.

The defendant argues that, after the officers had arrested the defendant and Goodwin, and once they made the decision to tow the defendant's car, the vehicle was essentially impounded, any latent exigency was

extinguished, and the *Miller* rationale became applicable. We are not persuaded. We begin by noting that *Miller*, by its own terms, was limited to situations in which a vehicle is searched at the police station. See id., 365 ("[t]he principal issue in this appeal is whether the state constitution prohibits a warrantless automobile search supported by probable cause but conducted while the automobile is impounded *at a police station*" [emphasis added]); id., 384 ("[w]e . . . reject the state's suggestion that the risks that lead police to tow an automobile to the police station also justify a warrantless search of the automobile after it has been impounded"); id., 384–85 (distinguishing "on-the-scene" searches from those conducted at police station).

Subsequently, in *State* v. *Smith*, supra, 257 Conn. 229–30, we clarified that *Miller* does not govern cases where an automobile remains in public and is therefore potentially mobile, even though the driver has been taken into police custody and the police have effective control of the vehicle. In *Smith*, as in the present case, the subject vehicle was parked in a residential parking lot and the defendant was on the scene, in police custody, when the search was conducted. Id., 219–21. Declining to extend *Miller* to searches conducted in readily accessible public venues, this court concluded that the search was permissible under the automobile exception. Reiterating that the "inherent mobility of [a car] creates exigent circumstances"; (internal quotation marks omitted) id., 228; we explained that "there was a continuing possibility that the defendant's car, which was located in a parking lot accessible to a public housing building, would be moved" because it had not been impounded. Id., 230.

The defendant suggests that his case is different because, in contrast to *Smith*, his car was ultimately impounded, and, in fact, the decision to impound the car may have already been made at the time of the

search. We discern in neither *Miller* nor *Smith*, however, any indication that it is the *decision* by police to impound a vehicle that renders a warrantless search improper where there is probable cause to believe that it contains contraband. Rather, both decisions reflect a concern that when officers are forced to delay their search until a warrant is procured, while the vehicle remains accessible to the public and is potentially mobile, the possibility remains that someone—possibly someone other than the defendant—will attempt either to remove the vehicle or to interfere with law enforcement efforts to maintain a secure crime scene. In the present case, for example, the defense conceded at oral argument that the registered owner of the car might have attempted to retrieve it, or its illegal contents, before it could be towed to an impound lot.[8]

The defendant next argues that the automobile exception claim is unpreserved because the trial court failed to make the necessary factual findings. He further contends that, because the state did not notify him of its intent to present the automobile exception as an alternate ground for affirmance on appeal, he would be prejudiced by his lack of opportunity to develop a record for appellate review. We are not persuaded. The absence of express factual findings does not automatically bar appellate review of the reasonableness of a warrantless search where the uncontroverted facts in the record provide an adequate basis for review. See

---

[8] As the defendant suggests, a police presence at the scene will help to deter any such attempt until the vehicle is impounded. But that very same deterrent effect exists in situations, as in *Smith*, where the vehicle is not ultimately to be impounded. In such cases, this and other courts have properly concluded that it is unreasonable to require law enforcement officers, who are already tasked with maintaining control of arrestees in insecure and potentially hostile environments, to remain in the field and simultaneously stand a careful and possibly prolonged watch over vehicles likely to contain contraband until a warrant can be procured. See, e.g., *Chambers* v. *Maroney*, supra, 399 U.S. 52 n.10.

footnote 6 of this opinion. In this particular case, none of the allegedly unresolved factual questions to which the defendant points is, as a matter of law, relevant to the constitutional analysis.[9] Specifically, as discussed previously in this opinion, we disagree with the defendant that the timing of the officers' decision to impound the car, or to make the telephone call initiating that impound, is relevant to the constitutional analysis. Instead, the dispositive question is whether the search was conducted in a public venue at the scene of the arrest, rather than in the security of the police station or an impound lot. Here, it is undisputed that the vehicle was searched at the scene, prior to the defendant's removal from the scene.[10] Accordingly, we conclude that the state's alternate ground for affirmance is reviewable.

---

[9] We therefore disagree with the defendant's contention that *State* v. *Joyce*, 229 Conn. 10, 639 A.2d 1007 (1994), resolves the question in his favor. In that case, we declined to consider the state's argument, presented for the first time on appeal, that the presence of gasoline on the defendant's clothing created an exigent circumstance justifying a warrantless search. We explained that the absence of trial testimony as to the evaporative properties of gasoline made it impossible for this court to determine whether the evidence was so evanescent as to constitute an exigent circumstance. Id., 27 n.19. Here, by contrast, the record is adequate for review.

[10] In the defendant's brief to this court, he recites the following facts: "After the arrest, the defendant was searched just prior to being placed in the backseat of the cruiser . . . . The police then searched the vehicle, and found [two] bags of crack cocaine and [three] bags of marijuana wrapped in a paper towel in the center console. . . . The police took the defendant to the hospital . . . ." Elsewhere in his brief, he reports that "[t]he defendant, still under arrest for interfering with an officer, was placed in the back of the patrol car; the license plate of the vehicle was called into dispatch and identified as belonging to [the defendant's wife], and the vehicle was then searched as a search incident to arrest. The drugs in the center console were discovered . . . . Both the defendant and [Goodwin] were arrested for possession of the drugs in the center console, and the car was impounded and removed from the scene by a towing company." Finally, the defendant relates that "[a]t the time of the search, the defendant was seated in the back of a squad car in handcuffs . . . ." The only reasonable reading of the defendant's own account of events is that the police searched his car prior to removing it, or him, from the crime scene.

Finally, the defendant suggests that the state may have waived its automobile exception argument by failing to raise it at trial or to alert this court from the outset as to its intention to raise that specific alternate ground for affirmance. The state emphasizes, however, that this court routinely has considered alternate grounds for affirming a trial court judgment where the record is adequate for review.[11] See, e.g., *Kelley* v. *Bonney*, 221 Conn. 549, 592, 606 A.2d 693 (1992). The state further suggests, and we agree, that in this particular case it would have been unreasonable to expect the prosecution to raise, or the trial court to consider, the automobile exception, when the law at the time of trial, prior to the United States Supreme Court's decision in *Gant*, left no doubt that the search was permissible as a search incident to a lawful arrest. See *Strohecker* v. *Canadian Pacific*, Superior Court, judicial district of Waterbury, Docket No. CV-95-0125123-S (June 16, 1999) ("a change in the law or some other change of circumstance [may justify] allowing a party who has waived a claim or defense to reassert it"); cf. *State* v. *Harrell*, 199 Conn. 255, 268, 506 A.2d 1041 (1986) ("we refuse here to impose a subsequently-created [requirement] for preserving a claim on appeal on a defendant who did all that was necessary to comply with the law applicable at the time of his trial" [internal quotation marks omitted]). Under these circumstances, we see no reason to bar the state from relying on a closely related exception to the warrant requirement, one that it surely would have argued at trial if the law then had been as the defendant now asserts it to be. Accordingly, we conclude that the trial court properly denied the defendant's motion to suppress.

[11] The state notes that, in its preliminary statement of issues intended for presentation on appeal, it did reserve the right to raise as alternate grounds "whether any statements or evidence were admissible under exceptions to the exclusionary rule including, *but not limited to*, the doctrines of consent, inevitable discovery, independent source, plain view, and search incident to arrest." (Emphasis added.)

## II

We next consider the defendant's claim that the evidence was insufficient to convict him of the possessory offenses.[12] Specifically, he argues that, because the trial court improperly applied the doctrine of nonexclusive possession, there was insufficient evidence for the jury to have found that he possessed the cocaine and marijuana found in the center console of his car.[13] The state responds that there was sufficient evidence for the jury to have found that the defendant constructively possessed the drugs. We agree with the state, and conclude that the evidence was sufficient to sustain the verdict under the well established standard by which we review sufficiency of the evidence claims. See, e.g., *State* v. *Na'im B.*, 288 Conn. 290, 295–97, 952 A.2d 755 (2008) (evidence construed in light most favorable to sustaining verdict in determining whether it is sufficient to prove guilt beyond reasonable doubt).

Because there was no direct evidence that the drugs found in the center console belonged to the defendant, the state argued the case under a theory of nonexclusive possession. "[T]o prove illegal possession . . . it is necessary to establish that the defendant knew the character of the substance, knew of its presence and exercised dominion and control over it. . . . Where . . . the [controlled substances were] not found on the defendant's person, the state must proceed on the theory of constructive possession, that is, possession without direct physical contact. . . . Where the defendant is not in exclusive possession of the premises where

[12] The defendant purports to challenge his "conviction for possession with intent to sell," a charge of which he was not ultimately convicted. We will assume that his sufficiency challenge encompasses his convictions for possession of narcotics and possession of a controlled substance.

[13] The defendant's sufficiency claim was properly preserved by his motion for a judgment of acquittal. See *State* v. *Tomas D.*, 296 Conn. 476, 484 n.14, 995 A.2d 583 (2010).

the [controlled substances] are found, it may not be inferred that [the defendant] knew of the presence of the [substances] and had control of them, unless there are other incriminating statements or circumstances tending to buttress such an inference." (Internal quotation marks omitted.) *State* v. *Martin*, 285 Conn. 135, 149–50, 939 A.2d 524, cert. denied, 555 U.S. 859, 129 S. Ct. 133, 172 L. Ed. 2d 101 (2008); see also *State* v. *Watson*, 165 Conn. 577, 596, 345 A.2d 532 (1973) (unconstitutional to presume possession of unlicensed firearm merely on basis of presence of weapon in vehicle); *State* v. *Bonner*, 110 Conn. App. 621, 637–38, 955 A.2d 625 (applying theory of nonexclusive possession when motor vehicle contained several occupants), cert. denied, 289 Conn. 955, 961 A.2d 421 (2008).

In the present case, the state points to a number of circumstances that, taken together, reasonably support a jury finding that the drugs in the center console belonged to the defendant. First, the defendant was driving the vehicle just prior to the search. See *State* v. *Bowens*, 118 Conn. App. 112, 123, 982 A.2d 1089 (2009) ("the defendant was driving the [car] containing the revolver, which itself suggests control of the firearm"), cert. denied, 295 Conn. 902, 988 A.2d 878 (2010); *State* v. *Sanchez*, 75 Conn. App. 223, 242–43, 815 A.2d 242 (similar), cert. denied, 263 Conn. 914, 821 A.2d 769 (2003). Second, the fact that the defendant's wife was the registered owner of the vehicle made it more likely that the defendant, rather than Goodwin, was aware of and controlled its contents. See *State* v. *Sanchez*, supra, 242–43 (fact that defendant was operating vehicle owned by his uncle was relevant in determining that defendant possessed drugs found therein). Third, based on the officers' testimony, the jury reasonably could have found that the defendant had five wax folds of heroin on his person at the time of arrest, which he swallowed to escape criminal liability. Everything else

being equal, possession of these suspected drugs made it more likely that the defendant, rather than his wife or Goodwin, was also the owner of the drugs in the vehicle. See *Allen* v. *State*, 249 S.W.3d 680, 701 (Tex. App. 2008) ("[p]ossession of another type of contraband than that charged is one of the potential factors that may be considered in determining a link between the accused and the contraband in question").[14] Fourth, as previously discussed, the defendant's physical possession of rolling papers and more than $550 in cash at the time of his arrest also rendered it more likely that

---

[14] The defendant contends that his case is nearly identical to *State* v. *Cruz*, 28 Conn. App. 575, 581, 611 A.2d 457 (1992), in which the Appellate Court reversed a possessory conviction in a nonexclusive possession context. We are not persuaded. In *Cruz*, during a routine traffic stop, police found rolling papers and a single marijuana seed in the common areas of a car driven by the defendant, Francisco Cruz. Id., 576–77. Although Cruz had no contraband on his person, a bag of heroin was found on his passenger. Id., 577. Cruz did admit to occasional marijuana use on prior occasions, but denied that the seed found in the rear seat was his. The Appellate Court, reversing his conviction, found that there was insufficient evidence for the jury to have found beyond a reasonable doubt that Cruz knew of the character and presence of the contraband, and exercised dominion and control over it. Id., 580.

Although *Cruz* does share some features in common with the present case, there are three important differences. First, in this case, unlike in *Cruz*, it was the *defendant*, rather than Goodwin, who had what appeared to be drugs in his possession at the time of arrest. Second, the present defendant tested positive for drug use—the same drugs he was convicted of possessing—at the time of arrest. Third, the present defendant, unlike Cruz, was in possession of money and materials that the jury reasonably could have found were linked to drug distribution. Those factors provide the link between the defendant and the contraband that the court found wanting in *Cruz*.

The defendant further contends that the fact that he went to such lengths to destroy the alleged heroin in his pocket implies that he could not have known about the cocaine and marijuana in the car. Because the latter would have been found inevitably in a police search of the vehicle, he posits, it would have been irrational for him to undertake the "risk and trouble" of eating the heroin. We decline the invitation to delve into the mind-set of an individual who, while in apparent possession of heroin and under the influence of both cocaine and opiates, suddenly found himself the subject of the unwelcome attention of two law enforcement officers.

the salable quantities of drugs in the car belonged to him. See also *State* v. *Bonner*, supra, 110 Conn. App. 640 (fact that defendant may have been in physical possession of cutting agent permitted inference that he possessed cocaine). Finally, the defendant's medical records reveal that he was a daily user of cocaine and marijuana, as well as heroin, and, tellingly, a laboratory analysis established the presence of cocaine and opiates in his urine on the date of his arrest. By contrast, the record contains no evidence of drug use by the defendant's wife or Goodwin—the other two individuals who might reasonably have owned the contraband—nor does it disclose any other indication that they might have been the actual owners. Accordingly, we agree with the state that, when the evidence and reasonable inferences drawn therefrom are viewed in the light most favorable to sustaining the verdict, the jury reasonably could have found that the defendant knew of, and exercised dominion and control over, the contraband found in the center console.

III

We next consider the defendant's claim that the trial court abused its discretion when it admitted his unredacted medical records into evidence. Specifically, he claims that the records contain both hearsay and evidence of uncharged misconduct that, while potentially admissible under §§ 4-5 (b), 8-3 (1) and (5) of the Connecticut Code of Evidence,[15] was nevertheless more

---

[15] Section 4-5 (b) of the Connecticut Code of Evidence provides in relevant part: "Evidence of other crimes, wrongs or acts of a person is admissible for purposes other than [to prove the bad character or criminal tendencies of that person], such as to prove intent, identity, malice, motive, common plan or scheme, absence of mistake or accident, knowledge, a system of criminal activity, or an element of the crime, or to corroborate crucial prosecution testimony."

Section 8-3 of the Connecticut Code of Evidence provides in relevant part: "(1) . . . A statement that is being offered against a party and is (A) the party's own statement, in either an individual or a representative capacity [is not excluded by the hearsay rule] . . . .

prejudicial than probative. We conclude that the defendant's own statements, as well as the results of laboratory tests, were properly admitted, and we further conclude that any error with regard to the admission of statements made by police officers was harmless.

The following additional undisputed facts and procedural history are relevant to the resolution of this claim. Upon his arrest, the officers took the defendant to the hospital, on the basis of their belief that he had swallowed a package containing five folds of heroin. The hospital records contain, inter alia: (1) a diagnosis of "[t]oxic ingestion with heroin bags [and] [h]istory of drug abuse"; (2) numerous statements by police officers indicating that the defendant "was witnessed ingesting about [five] bags of heroin, which he was thought to be selling"; (3) admissions by the defendant that he is a "regular user" who uses "about [ten] bags of heroin, some crack, and takes marijuana daily"; and (4) laboratory test results indicating that his urine toxicology on the day of arrest was "positive for cocaine and opiates."[16] The records, while noting that the defendant denied swallowing the bags and finding no apparent evidence to the contrary, nevertheless concluded that

"(5) . . . A statement made for purposes of obtaining a medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof, insofar as reasonably pertinent to the medical diagnosis or treatment [is not excluded by the hearsay rule]."

[16] Although the records do not explicitly state the sources of this information, the parties have assumed, and we have no reason to doubt, that information regarding the alleged swallowing of heroin packages, and the defendant's history of drug use, was supplied, respectively, by the police and the defendant.

The parties appear largely to agree that the contents of the records fall under the auspices of §§ 4-5 (b) and 8-3 (1) and (5) of the Connecticut Code of Evidence, and so are admissible unless unduly prejudicial. The defendant does suggest, however, that any statements made by police officers were inadmissible hearsay. Because this claim is not adequately briefed on appeal, we decline to consider it. *Sekor* v. *Board of Education*, 240 Conn. 119, 127 n.8, 689 A.2d 1112 (1997).

"[t]his is a [forty-four year old] male who admits to heroin, cocaine, and marijuana use who swallowed [five] bags of heroin in an attempt to avoid getting arrested."

At trial, the state sought to enter the records into evidence. The defense objected to the admission of the records without redaction, contending that the police statements, laboratory test results and admissions by the defendant were "highly prejudicial." The state initially agreed that any information in the reports supplied by the police "probably should be redacted,"[17] but argued that the admissions and test results were relevant to whether the defendant constructively possessed the drugs found in his car, and to whether he had attempted to destroy evidence. Over the defendant's objections, the court admitted the complete, unredacted records as a full exhibit.

We begin our legal analysis by noting that "[r]elevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice . . . ." Conn. Code Evid. § 4-3. "Because of the difficulties inherent in this balancing process, the trial court's decision will be reversed only whe[n] abuse of discretion is manifest or whe[n] an injustice appears to have been done. . . . On review by this court, therefore, every reasonable presumption should be given in favor of the trial court's ruling." (Internal quotation marks omitted.) *State* v. *Collins*, 299 Conn. 567, 582, 10 A.3d 1005 (2011).

"In determining whether the prejudicial effect of otherwise relevant evidence outweighs its probative value, we consider whether: (1) . . . the facts offered may

[17] The state subsequently indicated, however, that "if [the record] comes in, the entire document should come in," because even the statements by the police assisted the hospital in ascertaining the basis for the defendant's admission and therefore come under the auspices of § 8-3 (5) of the Connecticut Code of Evidence.

unduly arouse the jury's emotions, hostility or sympathy, (2) . . . the proof and answering evidence it provokes may create a side issue that will unduly distract the jury from the main issues, (3) . . . the evidence offered and the counterproof will consume an undue amount of time, and (4) . . . the defendant, having no reasonable ground to anticipate the evidence, is unfairly surprised and unprepared to meet it." (Internal quotation marks omitted.) Id., 586–87.

The defendant's primary argument on appeal is that his admission in his medical records that he was a regular user of heroin, cocaine and marijuana represented evidence of prior misconduct closely related to the charged offenses and was, therefore, unduly prejudicial. See *State* v. *Artieri*, 206 Conn. 81, 87, 536 A.2d 567 (1988) ("[w]here the prior crime is quite similar to the offense being tried, a high degree of prejudice is created and a strong showing of probative value would be necessary to warrant admissibility" [internal quotation marks omitted]). We disagree. As discussed previously in this opinion, we do not share the defendant's assessment that the defendant's admitted history of drug use was of only minimal probative value. To the contrary, the fact that he was a regular user of the very types of drugs found in his car made it more likely that the defendant, rather than his wife or Goodwin, was the owner of those drugs. See *State* v. *Harris*, 159 Conn. 521, 531–32, 271 A.2d 74 (1970) (needle marks on defendant's arm evidence that he, rather than wife or houseguest, owned heroin found in bedroom), cert. dismissed, 400 U.S. 1019, 91 S. Ct. 578, 27 L. Ed. 2d 630 (1971); annot., 56 A.L.R.3d 948, 962, § 8 [a] (1974) ("[e]vidence that the defendant was a user of narcotics or was under the influence of narcotics at the time of his arrest has been held in several cases to be a sufficient circumstance by itself, or in combination with others, tending to link the defendant with narcotics found on

premises or in an area of which he was in nonexclusive possession").

Turning to the other side of the equation, the defendant suggests that allowing the jury to view his admissions in the medical records was highly prejudicial because it allowed the state to "[paint] him as an addict." Again, we are not persuaded.

Our reading of the transcripts fails to bear out the defendant's assertion that the "state made ruthless and repeated use of the medical records in closing, stressing an overall theme of 'the defendant as addict.' " A thorough review of the transcripts from closing argument reveals only two references to the defendant as an "addict" or "addicted," and the state's argument overwhelmingly emphasized the defendant's actions on the date of the incident, rather than his alleged history of drug abuse. Moreover, any prejudice is mitigated by the fact that the medical records also contained the results of laboratory tests indicating that the defendant was under the influence of cocaine and opiates when he was admitted.[18] Once the jury had discovered the defendant was on multiple drugs at the time of the incident, in tandem with testimony that he was carrying rolling papers and had gone to extraordinary lengths to swallow a package of heroin, we doubt that the unadorned statement in a medical report that he admitted to daily heroin, cocaine, and marijuana use would have significantly increased the jury's hostility toward him or distracted them from the task at hand. Accordingly, we conclude that the trial court's decision not to redact the portions of the records containing admissions of prior drug use by the defendant was not an abuse of discretion.

It is unclear to what extent the defendant is also challenging on appeal the admission of the portions of

[18] The defendant does not challenge the admissibility of this portion of the unredacted records.

the records containing the officers' accounts of the defendant's conduct. The state contends that these statements were properly admitted pursuant to § 8-3 (5) of the Connecticut Code of Evidence because they guided the hospital's treatment of the defendant, and that they are probative, in that they help to reinforce the credibility of the officers' testimony that the defendant tampered with evidence during his arrest. Even assuming arguendo, however, that the statements should have been redacted, we conclude that any error was harmless because the information related in the records was merely cumulative of Sheppard's trial testimony as to the defendant's conduct.

## IV

Lastly, we address the defendant's claim that the trial court improperly instructed the jury as to the state's burden of proof, in violation of his rights to due process and to a fair trial under the federal constitution. Specifically, he contends that the court's jury instructions "diluted" the state's burden of having to prove guilt beyond a reasonable doubt. We disagree.

The following procedural history is relevant to our resolution of this claim. At the conclusion of the trial, the trial court instructed the jury that "the meaning of reasonable doubt can be arrived at by emphasizing the word reasonable. . . . It is such a doubt as, in serious affairs that concern you, you would take heed; that is, such a doubt as would cause reasonable men and women to hesitate to act upon it in matters of importance. . . . It is, in other words, a real doubt, an honest doubt . . . ." The defendant objects to the court's use of these instructions in lieu of his proposed reasonable doubt instructions, and contends that, taken in tandem, these instructions rise to the level of reversible error.

The defendant concedes, however, that this court has rejected virtually identical claims on multiple occa-

sions. See, e.g., *State* v. *Mark R.*, 300 Conn. 590, 617, 17 A.3d 1 (2011); *State* v. *Bowman*, 289 Conn. 809, 811 n.2, 960 A.2d 1027 (2008). We conclude that the defendant has offered no compelling reason for us to reconsider these cases. Moreover, as in those prior cases, we see no reasonable possibility that the challenged language, when read in the context of the entire charge regarding reasonable doubt, misled the jury in its understanding of the state's burden of proving the defendant's guilt beyond a reasonable doubt. Accordingly, we reject the defendant's claim of instructional impropriety and conclude that the trial court properly instructed the jury on reasonable doubt.

The judgment is affirmed.

In this opinion the other justices concurred.