******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

D'AURIA, J., concurring in the judgment. I agree with the majority of this court that the Appellate Court's judgment should be affirmed.

However, like the majority of the Appellate Court, I would not reach the thorny constitutional issue that the majority of this court addresses concerning the application of *Crawford* v. *Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). In fact, for my purposes, I do not feel the need even to reach the question of whether the trial court committed error as a purely evidentiary matter, although I do not necessarily disagree with the majority on that score.

Rather, my review of the record leads me to conclude that any error in the trial court's admission into evidence of the Jeep's inspection information was harmless beyond a reasonable doubt, as there was overwhelming evidence that the defendant, Casey Sinclair, constructively possessed the narcotics found in that vehicle. Thus, even if I were to assume that the admission of the inspection information gave rise to a constitutional violation, I would hold that the defendant is not entitled to a reversal of the judgment against him.

"[T]o prove illegal possession of a narcotic substance, it is necessary to establish that the defendant knew the character of the substance, knew of its presence and exercised dominion and control over it. . . . [When] . . . the [narcotics are] not found on the defendant's person, the state must proceed on the theory of constructive possession, that is, possession without direct physical contact." (Internal quotation marks omitted.) *State* v. *Mangual*, 311 Conn. 182, 215, 85 A.3d 627 (2014). To prove constructive possession of the narcotics, however, the state did not have the burden of proving that the defendant actually owned the vehicle in which the narcotics were found. See, e.g., *State* v. *Winfrey*, 302 Conn. 195, 210–13, 24 A.3d 1218 (2011) (that defendant's wife owned vehicle he was driving that contained contraband was among circumstances from which jury could infer defendant was in constructive possession of narcotics). Stated differently, although ownership of the vehicle may be probative of constructive possession of the contraband found in the vehicle, it is not determinative. See, e.g., *State* v. *Delossantos*, 211 Conn. 258, 277–78, 559 A.2d 164 (ownership of vehicle relevant to constructive possession analysis), cert. denied, 493 U.S. 866, 110 S. Ct. 188, 107 L. Ed. 2d 142 (1989). Rather, in situations in which contraband is found in a place owned by someone other than the defendant, this court has observed that what matters with respect to determining constructive possession is not "the defendant's dominion and control over [the] place," but rather "the defendant's dominion and control over the

*contraband.*" (Emphasis in original.) *State* v. *Johnson*, 316 Conn. 45, 61, 111 A.3d 436 (2015).

For largely the same reasons detailed by Judge Lavine in his opinion for the Appellate Court majority; see *State* v. *Sinclair*, 173 Conn. App. 1, 162 A.3d 43 (2017); I conclude that the state met its burden of demonstrating that any error in the admission of the evidence concerning the Jeep's inspection information was harmless beyond a reasonable doubt.[1] The state having sustained this burden, in my view, I would not reach the constitutional issue.[2]

I therefore respectfully concur in the judgment.

[1] An additional reason that the majority of this court did not include, however, which also persuades me that the admission of the inspection information was harmless, is the fact that the inspection of the vehicle at a location next to the defendant's business, Sinclair Enterprise, was of limited probative value as to whether the defendant exercised control over the vehicle at the time the police discovered the contraband. Unlike much of the evidence the state presented, the vehicle inspection evidence did not directly connect the defendant to the narcotics, nor even directly connect him to the Jeep. Rather, it only connected the Jeep to the garage next to his business. The defendant contends that the jury could have inferred that he actually controlled the vehicle because it was inspected near his business. However, given the testimony of Winsome Lawrence, the defendant's girlfriend, that her Oldsmobile was serviced at Manny's Auto, the jury could also have inferred that Lawrence would have had all her cars serviced or inspected at the same garage, and that Lawrence controlled the Jeep.

[2] I also agree with part III of the majority's opinion in which it concluded that the defendant did not meet his burden to establish that he was deprived of his due process right to a fair trial as a result of alleged prosecutorial improprieties during closing argument to the jury.