******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* CHAZANTINE GRIFFIN
## (AC 45019)

Prescott, Elgo and DiPentima, Js.

*Syllabus*

Convicted of assault of an elderly person in the second degree, the defendant appealed to this court. The defendant regularly sold illegal drugs to the victim, who was sixty-four years old. After the victim failed to pay off an outstanding debt, the defendant went to her residence and struck her multiple times on the head with a handgun. The victim reported the incident to the police, and, a few weeks later, in an attempt to apprehend the defendant, the police arranged for a confidential informant to conduct a controlled purchase of illegal drugs from him. When the defendant arrived at the agreed upon location, the informant identified him to the police officers who were observing the transaction from unmarked vehicles. The officers arrested the defendant, handcuffed him, and placed him into a police car. At the time of his arrest, the defendant had a key fob to a vehicle in his pocket, and the police used it to find the vehicle the defendant had arrived in, which was parked in a visitor's spot of the parking lot of a nearby apartment building. One of the vehicle's windows was down, and the smell of marijuana emanated from it. The police officers determined that the vehicle was registered to the defendant's foster mother and then conducted a warrantless search of it, seizing illegal drugs, a scale, and a handgun. After finding clothing consistent with that worn by a suspect in an unrelated shooting that had occurred earlier that month, the police officers stopped their search, towed the vehicle to the police department, and subsequently obtained a warrant to seize the clothing and the handgun. The defendant filed a motion to suppress the evidence recovered from the vehicle, claiming that the police had lacked probable cause to search it. The trial court denied the motion, and the state introduced into evidence the handgun and a photograph of it. On the defendant's appeal to this court, *held* that the defendant was not entitled to a new trial because the trial court's denial of the defendant's motion to suppress was not improper, as the court properly relied on the automobile exception to the fourth amendment's warrant requirement to determine that the police were not obligated to obtain a warrant before searching the vehicle: the defendant's claim that the state was required to prove that he was in or near the vehicle at the time he was detained by the police in order for the automobile exception to apply was unavailing, as the defendant did not cite to any cases in his brief that were decided under the fourth amendment that imposed such a proximity requirement and, even though most Connecticut cases that arose under the exception typically involved factual scenarios in which the warrantless search of a vehicle was conducted immediately after observing the defendant in or near the vehicle, the policy justifications that underlie the exception, namely, the reduced expectation of privacy in the contents of a vehicle and the inherent mobility of a vehicle, applied regardless of whether the defendant was near the vehicle at the time of the search or otherwise lacked access to it because he was in the custody of law enforcement, and, in the present case, any expectation of privacy the defendant may have had in the contents of the vehicle was further reduced by the fact that the vehicle was left in a public place with the window of the vehicle open; moreover, the defendant's reliance on *State* v. *Miller* (227 Conn. 363) was misplaced because he raised a claim pursuant only to the federal constitution, whereas *Miller* specifically addressed a claim under our state constitution and, by its own terms, was limited to situations in which a vehicle was searched at a police station and, therefore, did not govern situations in which a vehicle remained in public and was potentially mobile; furthermore, the totality of the facts supported the conclusion that probable cause existed to search the defendant's vehicle, as the police had ample evidence to infer that the vehicle was the one that the defendant had driven to the scene to complete a narcotics transaction, including that the defendant had agreed to meet the confi-

dential informant to engage in a narcotics transaction, the defendant was in possession of cocaine and marijuana at the time of his arrest, other individuals to whom the defendant had previously sold drugs told the police that he typically would park his vehicle near the agreed upon location and then walk the remainder of the way, the key fob found on the defendant operated the vehicle's lights, the vehicle was located less than 500 yards from where the defendant was arrested, and the vehicle was registered to his foster mother, and, although the police did not observe the defendant in or near the vehicle, that did not undermine the factual nexus between the defendant and the vehicle; additionally, the police had a reasonable basis to conclude that there was a fair probability of finding contraband or evidence of a crime in the defendant's vehicle, as it was found by the police within minutes of the defendant's arrest, the police knew that the defendant had arrived in the vehicle with the intent to sell illegal drugs, the defendant had illegal drugs on his person when he was taken into custody, and the police could smell marijuana emanating from the vehicle.

Argued September 12, 2022—officially released January 24, 2023

*Procedural History*

Substitute information charging the defendant with the crimes of robbery in the first degree and assault of an elderly person in the second degree, brought to the Superior Court in the judicial district of New Haven, geographical area number seven, where the court, *Alander, J.*, denied the defendant's motion to suppress certain evidence; thereafter, the case was tried to the jury before *Alander, J.*; verdict and judgment of guilty of assault of an elderly person in the second degree, from which the defendant appealed to this court. *Affirmed.*

*Alexander T. Taubes*, for the appellant (defendant).

*Kathryn W. Bare*, senior assistant state's attorney, with whom, on the brief, were *Patrick J. Griffin*, chief state's attorney, and *Andrew Reed Durham*, former assistant state's attorney, for the appellee (state).

*Opinion*

PRESCOTT, J. The defendant, Chazantine Griffin, appeals from the judgment of conviction, rendered after a jury trial, of assault of an elderly person in the second degree in violation of General Statutes § 53a-60b (a) (1). On appeal, the defendant claims that the trial court improperly denied his motion to suppress a firearm and narcotics that were seized by the police following a warrantless search of a motor vehicle that was connected to the defendant and located near the scene of the defendant's arrest.[1] We conclude that, under the circumstances of this case, the court properly relied on the automobile exception in determining that the police were not obligated to obtain a warrant before searching the vehicle. Accordingly, we affirm the judgment of the court.

The jury reasonably could have found the following facts. The defendant regularly sold crack cocaine to the victim, who was sixty-four years old and resided in Meriden. In August, 2018, the victim owed the defendant $80, which she intended to pay after receiving her next pension check. On August 2, 2018, the defendant went to the victim's residence and threatened to shoot her if she did not have the money by the following day.

The defendant returned the next day to collect his money. A friend of the victim was present, and the victim began taking pictures of the defendant with her friend's cell phone. This enraged the defendant. The defendant took out a small black and silver handgun, struck the victim in the head with it several times, and said to her, "bitch, I should end you." The assault caused her to suffer physical pain and lumps on her head. After the defendant left the residence, the victim's friend called 911 and reported the assault to the police.

The following day, the victim gave a statement to the police regarding the incident and identified the defendant in a photographic array as the individual who had struck her with a handgun. The friend of the victim also gave a statement to the police, corroborated the victim's account of the incident, and described the firearm used to strike the victim.

Approximately three weeks after the assault, police officers arrested the defendant in Meriden on an outstanding warrant. At the time of his arrest, the defendant tossed a yellow baggy containing crack cocaine onto the ground. In a search incident to his arrest, the police seized from one of his pockets marijuana and a car key with a key fob that opened a motor vehicle parked nearby. From the vehicle, the police ultimately seized a small black and silver handgun and other contraband. Comparisons of DNA taken from swabs of the handgun and the defendant's DNA yielded a statistical probability of one in one hundred billion that the defendant was not a contributor to the DNA found on the firearm.

The firearm and a photograph of it were admitted into evidence at the defendant's subsequent trial.

The jury returned a split verdict of not guilty of robbery in the first degree and guilty of assault of an elderly person in the second degree. The court subsequently sentenced the defendant to fifty-four months of incarceration. This appeal followed.

On appeal, the defendant claims that he is entitled to a new trial on the assault charge because the trial court improperly denied his motion to suppress the evidence seized from the vehicle. Specifically, he contends that the search of the vehicle by the police without a warrant violated the fourth amendment's prohibition on unreasonable searches and seizures[2] because the automobile exception did not excuse the police officer's failure to obtain a search warrant authorizing a search of the vehicle.[3] We are not persuaded.

The following additional facts and procedural history are relevant to the defendant's claim. In late August, 2018, the police attempted to find the defendant to serve on him two arrest warrants. On August 29, 2018, the police, with the cooperation of a reliable, confidential informant, arranged a controlled purchase of illegal drugs from the defendant. The police had the confidential informant set up the purchase to take place on Crown Street in Meriden because the defendant lived nearby. The police officers awaited in several unmarked vehicles nearby to observe.

As the defendant approached the area, the confidential informant identified the defendant for the officers, who then converged on him near the intersection of Roy and Crown Streets. During the process of taking him into custody, the defendant threw a cellophane wrapped package into the tall grass just off the street. The substance contained in the package field tested positive for cocaine.

The police searched the defendant incident to his arrest, and, in his pocket, the police found a bag of marijuana and a car key to a Mercury automobile. The defendant was handcuffed and put into a police car.

Prior to the defendant's arrest, the police had obtained information from individuals who previously had purchased drugs from the defendant that it was his practice when selling drugs to park on a side street or around the corner from the location where the sale was to take place and then to walk to that location. On the basis of this information, and after considering the direction from which the defendant had walked to the scene, two officers began to search for the defendant's vehicle. Within five minutes, the officers located the defendant's automobile, a 2004 Mercury Sable LS. They were successful in doing so by pressing the key fob taken from the defendant, which illuminated the vehicle's lights. The hood and front grill of the vehicle were

warm to the touch, suggesting that it recently had been driven.

The vehicle was parked in a visitor's parking spot at an apartment building located at 27 Harrison Place, less than one-quarter mile away from where the defendant was taken into custody. One of its windows was down and the officers could smell the odor of marijuana coming from the vehicle. The officers quickly determined that the vehicle was registered to the defendant's foster mother.

The police officers then conducted a warrantless search of the Mercury and seized from the vehicle crack cocaine, marijuana, and a digital scale. The officers also found a handgun in the center console and, in the backseat area, clothing that was consistent with clothing worn by a suspect who had been involved in a shooting incident at a Sam's Food Store in Meriden earlier that August. The officers then stopped the search and towed the vehicle to the police department. The police subsequently obtained a warrant to seize the clothing and the gun found in the Mercury.

Following the evidentiary portion of the hearing on the defendant's motion to suppress, the state argued to the court that the officers had probable cause to search the vehicle and that their warrantless search of the vehicle was permitted by the well established automobile exception to the warrant requirement. The state argued that, having found that the defendant possessed marijuana and cocaine at the time he was taken into custody, they had probable cause to suspect that additional contraband would be found in his vehicle because (1) the officers possessed information that the defendant typically engaged in the sale of narcotics and that he would park in an area near to where the sale was to occur and then walk to that location, (2) the officers knew, through the confidential informant, that the defendant had come to the location to sell drugs that day, (3) the Mercury was found in close proximity to where the defendant was arrested, (4) the car key found on the defendant connected him directly to the vehicle, and (5) the smell of marijuana was emanating from a window of the vehicle.

In response, defense counsel claimed that the motion to suppress should be granted because the police lacked probable cause, under the totality of the circumstances, to search the vehicle. Specifically, defense counsel contended that the degree of attenuation between the Mercury and the defendant was too great because (1) no one saw him operating the vehicle or in close proximity to it, (2) the vehicle was not in eyesight when he was arrested, (3) the Mercury was not registered to him, and (4) the officers had to search for the vehicle in order to locate it.

At the conclusion of the parties' legal arguments, the

court, *Alander, J.*, denied the defendant's motion to suppress in an oral ruling. The trial court found, in addition to much of the evidence discussed by the state in its argument, that, on the basis of the evidence that had been presented, including the search warrant, the vehicle was registered to someone directly connected to the defendant and the vehicle was warm to the touch, thereby suggesting that the defendant had just driven the vehicle to the location where it was found. As a result, the state was permitted to introduce into evidence during the defendant's subsequent trial the handgun seized from the defendant's vehicle and a photograph taken by the police of the handgun. The victim and her friend who was present during the assault testified at trial that the handgun depicted in the photograph was the weapon used to strike the victim in the head or was at least consistent in appearance thereto.

We now address the standard of appellate review applicable to the defendant's claim on appeal and the substantive law governing the warrantless search of an automobile. "The standard of review for a motion to suppress is well settled. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [If] a question of fact is essential to the outcome of a particular legal determination that implicates a defendant's constitutional rights, [however] and the credibility of witnesses is not the primary issue, our customary deference to the trial court's factual findings is tempered by a scrupulous examination of the record to ascertain that the trial court's factual findings are supported by substantial evidence. . . . [If] the legal conclusions of the court are challenged, [our review is plenary, and] we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." (Internal quotation marks omitted.) *State* v. *Pompei*, 338 Conn. 749, 756, 259 A.3d 644 (2021). In the present case, the defendant on appeal does not challenge any of the factual findings made by the court in adjudicating his motion to suppress. Accordingly, our review of the trial court's legal conclusion that the search of the defendant's vehicle was permitted by the automobile exception is plenary.

"We next consider the scope of the warrant requirement as applied to motor vehicle searches. The police ordinarily may not conduct a search and make a seizure unless a neutral and detached magistrate first issues a warrant based on probable cause. . . . [A] warrantless search and seizure is per se unreasonable, subject to a few well defined exceptions. . . . These exceptions have been jealously and carefully drawn . . . . Specifically, a warrantless search of an automobile may be deemed reasonable if it was: (1) made incident to a lawful arrest; (2) conducted when there was probable cause to believe that the car contained contraband or

evidence pertaining to a crime; (3) based upon consent; or (4) conducted pursuant to an inventory of the car's contents incident to impounding the car." (Citations omitted; internal quotation marks omitted.) *State* v. *Winfrey*, 302 Conn. 195, 201, 24 A.3d 1218 (2011). The burden is on the state to establish the applicability of the automobile exception. *State* v. *Badgett*, 200 Conn. 412, 424, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986).

Under our federal constitution, "[t]he justification for . . . [the] automobile exception is twofold: (1) the inherent mobility of an automobile creates exigent circumstances; and (2) the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office. . . . In recent years, the United States Supreme Court has placed an increasing emphasis on the reduced expectation of privacy justification . . . [such] that [e]ven in cases where an automobile [is] not immediately mobile, the lesser expectation of privacy resulting from its use as a readily mobile vehicle justifie[s] application of the vehicular exception. Thus, under the fourth amendment, a warrantless vehicle search does not require a showing of exigent circumstances."[4] (Internal quotation marks omitted.) *State* v. *Brito*, 170 Conn. App. 269, 293, 154 A.3d 535, cert. denied, 324 Conn. 925, 155 A.3d 755 (2017).

"Probable cause to search exists if: (1) there is probable cause to believe that the particular items sought to be seized are connected with criminal activity or will assist in a particular apprehension or conviction . . . and (2) there is probable cause to believe that the items sought to be seized will be found in the place to be searched. . . . The determination of whether probable cause exists under the fourth amendment to the federal constitution . . . is made pursuant to a totality of circumstances test. . . . Under [this] test, a court must examine all of the evidence relating to the issue of probable cause and, on the basis of that evidence, make a commonsense, practical determination of whether probable cause existed. . . . We have said that the question is whether there was a fair probability that the contraband was within the place to be searched." (Citations omitted; internal quotation marks omitted.) *State* v. *Smith*, 257 Conn. 216, 223, 777 A.2d 182 (2001).

We now turn to the merits of the defendant's claim. The defendant first argues that the "automobile exception cannot apply where the defendant was neither seen inside the vehicle nor anywhere near the vehicle." We construe the defendant's assertion to mean that, even if law enforcement has probable cause to search a vehicle for contraband or evidence of a crime, the automobile exception categorically does not apply unless the state also proves that the defendant was inside or near the vehicle at the time he was arrested or that the police

stopped the vehicle with the defendant in it. We disagree that the fourth amendment imposes such a requirement.

In the two pages that the defendant devotes to this argument in his principal brief, he has not cited to a single case decided under the fourth amendment that specifically has imposed such a proximity requirement. Although Connecticut cases arising under the automobile exception to the fourth amendment's warrant requirement typically have involved factual scenarios in which the warrantless search of a vehicle is conducted immediately after observing the defendant near or in the vehicle; see, e.g., *State* v. *Longo*, 243 Conn. 732, 735, 708 A.2d 1354 (1998) (defendant was in rear seat of vehicle when it was stopped by police); *State* v. *Dukes*, 209 Conn. 98, 100–101, 547 A.2d 10 (1988) (defendant was stopped by police while he was driving vehicle); *State* v. *Badgett*, supra, 200 Conn. 414 (defendant was driving vehicle when stopped by police); *State* v. *Patterson*, 31 Conn. App. 278, 309, 624 A.2d 1146 (1993) (police observed defendant as he exited vehicle to approach them), rev'd on other grounds, 230 Conn. 385, 645 A.2d 535 (1994);[5] the policy justifications that underlie the automobile exception to the fourth amendment's warrant requirement apply just as vigorously even if the defendant is not found in or observed near the vehicle at the time of the search. Indeed, the defendant has a reduced expectation of privacy in the contents of the vehicle regardless of whether he is viewed by law enforcement in or near his vehicle at the time of the search because it is the inherent nature of an automobile and its presence in a public place that creates a reduced expectation of privacy in it. See *California* v. *Carney*, 471 U.S. 386, 391–93, 105 S. Ct. 2066, 85 L. Ed. 2d 406 (1985).[6] Moreover, any expectation of privacy the defendant may have in the contents of the vehicle may be further reduced if he has left the vehicle in a public location where he lacks the ability to monitor the vehicle and others' access to it. This is especially true if a person leaves a window of the vehicle open, as did the defendant here.

Additionally, fourth amendment case law makes clear that the inherent mobility of the vehicle exists regardless of whether the defendant is near the vehicle; see *United States* v. *Howard*, 489 F.3d 484, 492–94 (2d Cir.) (concluding that vehicles parked on side of highway were inherently mobile despite defendant's voluntary presence at police barracks located some distance from highway), cert. denied, 552 U.S. 1005, 128 S. Ct. 525, 169 L. Ed. 2d 365 (2007); *State* v. *Smith*, supra, 257 Conn. 227, 230 (despite defendant's flight from his vehicle, there was "continuing possibility that the defendant's car, which was located in a parking lot accessible to a public housing building, would be moved"); or otherwise lacks access to the vehicle because he or she is in the custody of, or detained by, law enforcement. See *State* v. *Winfrey*, supra, 302 Conn. 206; *State* v.

*Smith*, supra, 229–30.

The defendant principally relies on our Supreme Court's decision in *State* v. *Miller*, 227 Conn. 363, 384–85, 630 A.2d 1315 (1993), to assert that the automobile exception does not apply unless the defendant, at the time the vehicle was searched, had just been seen by law enforcement in or near the vehicle. In *Miller*, the court specifically addressed a claim that our state constitution prohibited the warrantless search of a vehicle after it had been impounded and towed to the police station. Id., 377. Although the federal constitution does not prohibit the warrantless search of a vehicle that has been impounded at a police station, provided the police have probable cause to search the car; see id.; see also *Chambers* v. *Maroney*, 399 U.S. 42, 51–52, 90 S. Ct. 1975, 26 L. Ed. 2d 419 (1970); our Supreme Court concluded that article first, § 7, of the Connecticut constitution prohibits such a warrantless search.[7] *State* v. *Miller*, supra, 386–87.

The defendant's reliance on *Miller* is misplaced for two reasons. First, as we previously discussed, the defendant in the present case has raised a claim pursuant to only our federal constitution. See footnotes 3 and 4 of this opinion. Second, "*Miller*, by its own terms, was limited to situations in which a vehicle is searched at the police station . . . [and] does not govern cases [in which] an automobile remains in public and is therefore potentially mobile, even [if] the driver has been taken into police custody and the police have effective control of the vehicle." *State* v. *Winfrey*, supra, 302 Conn. 206. Accordingly, *Miller* does not support the defendant's fourth amendment challenge to the warrantless search in the present case.

We recognize, as the defendant argues, that our Supreme Court sometimes has referred to the automobile exception as applying to " 'warrantless on-the-scene automobile searches' . . . ." See, e.g., *State* v. *Williams*, 311 Conn. 626, 641, 88 A.3d 534 (2014); *State* v. *Miller*, supra, 227 Conn. 384. The defendant attempts to rely on this language, in isolation, to argue that the automobile exception applies only to cases in which a defendant's vehicle is searched immediately after his arrest or detention after he had been driving the vehicle or standing near it. This assertion is devoid of merit. Read in context, our Supreme Court has occasionally used such shorthand terminology simply to distinguish a warrantless search of a vehicle conducted while the vehicle is impounded at the police station from a warrantless search of a vehicle conducted while that vehicle is still located in a public place. None of the cases cited by the defendant that employs such language purports to define what is meant by the term "on-the-scene" or, with the exception of *Miller*, involved a claim in which the vehicle is searched when the defendant is not immediately next to or taken out of the vehicle.

By rejecting the defendant's claim, we do not mean to suggest that a defendant's physical proximity to, and factual connection with, the vehicle to be searched is irrelevant to the question of whether the automobile exception applies in a particular case. Such facts often will bear directly on the question of whether probable cause exists to search the vehicle under the totality of the circumstances. See, e.g., *United States* v. *Edwards*, 632 F.3d 633, 644–45 (10th Cir. 2001) (analyzing defendant's lack of proximity to vehicle as part of totality of circumstances bearing on existence of probable cause). Indeed, if a vehicle is located hundreds of miles from the location of the defendant's arrest or the site of the criminal activity, it may be more factually difficult to prove that there is probable cause to believe that the vehicle contains contraband or evidence of a crime. On the other hand, in such circumstances, there may be other facts in existence that support a finding of probable cause despite a lack of physical proximity to the vehicle. In sum, the location of the vehicle, including its proximity to the defendant, is just one fact to be considered, under the totality of the circumstances, in determining whether there is probable cause to search the vehicle under the automobile exception to the fourth amendment's warrant requirement.

Having disposed of the defendant's assertion that the automobile exception categorically does not apply unless the state also proves that the defendant was seen inside or near the vehicle at the time he is arrested or that the police stopped the vehicle, we next address the defendant's assertion that the police lacked probable cause under the totality of the circumstances to search his vehicle. Although the defendant does not challenge any of the underlying facts found by the trial court in support of its conclusion that the police had probable cause to search his vehicle in this case, he argues that those facts, alone or in combination, do not demonstrate probable cause to search his vehicle. We are not persuaded.

We agree with the court that the totality of the following facts supported a reasonable belief by law enforcement that there was a fair probability that evidence of a crime or contraband was within the defendant's vehicle. First, the defendant had agreed to meet the confidential informant on Crown Street to engage in a narcotics transaction. That fact was confirmed when the police officers took the defendant into custody at the location and found him to be in possession of marijuana and cocaine. The police officers also knew from other individuals to whom the defendant had sold drugs in the past that he typically would drive his vehicle to a place near the location at which the sale was to occur, park his vehicle, and then walk to the agreed upon location.

Moreover, the police officers had substantial evi-

dence tying the defendant to the particular vehicle they searched because the key fob found on the defendant operated the vehicle's lights, the vehicle was located less than 500 yards from where the defendant was arrested, and it was registered to someone directly connected to the defendant, his foster mother.[8] Accordingly, the police officers had ample evidence to infer that this was the vehicle that the defendant had driven to the scene so that he could complete a nearby narcotics transaction. The fact that no police officer observed the defendant in or near the vehicle at that precise moment does not undermine in any way the strong factual nexus between the defendant and this vehicle.

The police officers had a reasonable basis to conclude that there was a fair probability of finding contraband or evidence of a crime in the defendant's vehicle. The defendant's vehicle was found by the police within five minutes of his arrest. They knew that the defendant had arrived in his vehicle to sell drugs, and he had cocaine and marijuana on his person when he was taken into custody. From these facts, it was reasonable to infer that his vehicle may contain additional contraband or other evidence regarding the sale of illegal drugs. Moreover, the police could smell the odor of marijuana emanating from the vehicle.[9] See *State* v. *Brito*, supra, 170 Conn. App. 313–15. All of these facts, considered in their totality, amply support a conclusion that probable cause existed to search the defendant's vehicle.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defendant also claims that the state cannot demonstrate that the admission of evidence unlawfully obtained from the search of the motor vehicle was harmless beyond a reasonable doubt. Because we conclude that the trial court properly denied the motion to suppress, we need not address this claim.

[2] The fourth amendment to the United States constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., amend. IV.

[3] Although the defendant, in his written motion to suppress, referred to our state constitution, he did not brief or otherwise argue to the court that the warrantless search of his automobile violated the state constitution. On appeal, the defendant also does not appear to claim that the warrantless search of his vehicle violated article first, § 7, of the Connecticut constitution. Although in his principal brief on appeal he relies on one case addressing the scope of the automobile exception under our state constitution, we construe his brief, as does the state, as raising only a federal constitutional claim. The defendant in his reply brief does not challenge the state's assertion that he properly briefed only a federal claim. Moreover, to the extent that the defendant has attempted to advance such a state constitutional claim on appeal, he has not adequately briefed it pursuant to the strictures of *State* v. *Geisler*, 222 Conn. 672, 684–85, 610 A.2d 1225 (1992). Accordingly, even if raised, we deem it abandoned.

[4] We recognize that, under article first, § 7, of the Connecticut constitution, the policies that justify the automobile exception are narrower than those that underlie the fourth amendment's automobile exception. See *State* v. *Miller*, 227 Conn. 363, 384–85, 630 A.2d 1315 (1993) (state constitution "tolerate[s] the warrantless on-the-scene automobile search *only* because obtaining a warrant would be impracticable in light of the inherent mobility of automobiles and the latent exigency that mobility creates" (emphasis in

original)). Because the defendant has not asserted a claim under our state constitution, however, we may properly rely on the defendant's reduced privacy interests in the contents of his vehicle under federal law. See footnote 3 of this opinion.

[5] This is not always the case, at least not with respect to other jurisdictions. In *United States* v. *Williams*, 878 F. Supp. 2d 190, 206–207 (D.D.C. 2012), aff'd, 773 F.3d 98 (D.C. Cir. 2014), cert. denied, 575 U.S. 1019, 135 S. Ct. 2336, 191 L. Ed. 2d 997 (2015), the United States District Court for the District of Columbia upheld the warrantless search of a defendant's vehicle that the police located by using a key fob seized from the defendant during his arrest at the police station on unrelated drug charges. There was no evidence in *Williams* that the police had ever seen the defendant driving, occupying, or standing near this vehicle prior to conducting the warrantless search. See id., 196, 206–207; see also *United States* v. *Wider*, 951 F.2d 1283, 1285–86 (D.C. Cir. 1991) (warrantless vehicle search was upheld even though police did not observe defendant in vehicle or standing next to it).

[6] Specifically, the United States Supreme Court in *Carney* stated: "[T]he expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office. . . .

"Even in cases where an automobile was not immediately mobile, the lesser expectation of privacy resulting from its use as a readily mobile vehicle justified application of the vehicular exception. . . . In some cases, the configuration of the vehicle contributed to the lower expectations of privacy . . . because the passenger compartment of a standard automobile is relatively open to plain view . . . . But even when enclosed repository areas have been involved, we have concluded that the lesser expectations of privacy warrant application of the exception. . . .

"These reduced expectations of privacy derive not from the fact that the area to be searched is in plain view, but from the pervasive regulation of vehicles capable of traveling on the public highways. . . . As we [have] explained . . . [a]utomobiles, unlike homes, are subjected to pervasive and continuing governmental regulation and controls, including periodic inspection and licensing requirements. As an everyday occurrence, police stop and examine vehicles when license plates or inspection stickers have expired, or if other violations, such as exhaust fumes or excessive noise, are noted, or if headlights or other safety equipment are not in proper working order. . . .

"The public is fully aware that it is accorded less privacy in its automobiles because of this compelling governmental need for regulation. Historically, individuals always [have] been on notice that movable vessels may be stopped and searched on facts giving rise to probable cause that the vehicle contains contraband, without the protection afforded by a magistrate's prior evaluation of those facts. . . . In short, the pervasive schemes of regulation, which necessarily lead to reduced expectations of privacy, and the exigencies attendant to ready mobility justify searches without prior recourse to the authority of a magistrate so long as the overriding standard of probable cause is met." (Citations omitted; internal quotation marks omitted.) *California* v. *Carney*, supra, 471 U.S. 391–92.

[7] Article first, § 7, of the Connecticut constitution provides: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."

[8] The fact that the vehicle's hood was warm to the touch also supports a finding of probable cause because it reasonably suggests that it had just been driven to the location in which it was found. Although the defendant attempts to minimize this fact by asserting that the hood could have been warm because it was August, the court was free to infer from the officer's testimony that the warmth was caused by the vehicle's operation rather than the August sun. Even if this fact did not support a determination of probable cause and we were to disregard it, the totality of the remaining factual circumstances amply supports the court's ultimate determination of probable cause.

[9] In his reply brief, the defendant asserts that General Statutes § 54-33p undermines the probable cause determination to the extent that it is premised on the odor of marijuana coming from his vehicle. This statute, first enacted in 2021; see Public Acts, Spec. Sess., June, 2021, No. 21-1, § 18; provides in relevant part: "(a) . . . [T]he existence of any of the following circumstances shall not constitute in part or in whole probable cause or reasonable suspicion and shall not be used as a basis to support any stop or search of a person or motor vehicle: (1) [t]he odor of cannabis or burnt

cannabis  .  .  .  .

"(b) Any evidence discovered as a result of any stop or search conducted in violation of this section shall not be admissible in evidence in any trial, hearing or other proceeding in a court of this state. . . ." General Statutes § 54-33p.

The defendant's reliance on this statutory provision is misplaced for at least two reasons. First, it is well established that we do not entertain arguments raised for the first time in a reply brief. See *State* v. *Myers*, 178 Conn. App. 102, 103, 174 A.3d 197 (2017). Second, this provision became effective on July 1, 2021, almost three years after the defendant's arrest and search of his motor vehicle. The defendant has not adequately briefed whether this statute must be applied retroactively to the present case. Finally, even if the police officer had not been able to smell the odor of marijuana emanating from the vehicle, the other facts we have recited are sufficient to establish probable cause to search the vehicle.

———————————————————